BETHLEHEM STEEL COMPANY *v.* IRA H. MAYO
[No. 42, January Term, 1935.]

*Decided March 16th, 1935.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, and SHEHAN, JJ.

*J. de Bruyn Kops, Jr.,* and *William L. Marbury, Jr.,* with whom were *George Weems Williams, Boyd B. Graham, and Jenifer & Jenifer,* on the brief, for the appellant.

*Howard C. Price,* with whom was *Lawrence E. Ensor* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Ira H. Mayo, the appellee, was on August 29th, 1933, awarded compensation by the State Industrial Accident Commission for a total temporary disability resulting from accidental injuries which he sustained on June 20th, 1933, in the course of his employment by the Bethlehem Steel Company.

On January 5th, 1934, Dr. F. E. Shaffer reported to the commission that the claimant had suffered a permanent partial disability to the extent of "50 per cent. loss of use of his left leg," and that the period of total disability existed up to January 2nd, 1934.

On January 17th, 1934, claimant requested a hearing to determine the extent of his disability, and after a hearing allowed on that request, on February 10th, 1934, the commission terminated the payments for total temporary disability directed by its previous order, and allowed compensation for a permanent partial disability occasioned by "fifty per cent. loss of use of left leg." From that award the claimant appealed to the Circuit Court for Baltimore County.

Pending the appeal, the employer paid, and the claimant accepted, compensation at the rate provided in the order of February 17th, and on October 16th, 1934, the employer moved to dismiss the appeal on the ground that by accepting such payments the claimant waived his right to appeal. That motion was overruled, and the parties submitted these issues:

*Employer's Issue.* Is the Claimant, Ira Mayo, permanently partially disabled in his left leg in excess of 50% loss of use?

*Claimant's Issue.* As a result of a permanent partial disability sustained by Ira H. Mayo, what is the percentage of loss of use of the left leg of said Ira H. Mayo?

The court granted the employer's issue, refused the claimant's issue, and framed and granted the following issue: If the jury answers "Yes" to the Employer's issue, then to what extent is the claimant disabled?

The case was tried before the court and a jury upon those issues, and at the conclusion of the trial the jury returned a verdict answering "Yes" to the employer's issue, and "100 per cent." to the court's issue. Upon that verdict this judgment was entered: "Judgment on Verdict made absolute, reversing the Order of the State Industrial Accident Commission dated February 10, 1934, and increasing the permanent partial disability in the Claimant's left leg from 50 per cent. to 100 per cent." This appeal is from that judgment.

The first question presented is whether the appeal to the Circuit Court for Baltimore County should have been dismissed.

The general rule is that one cannot at the same time accept the benefits accruing to him under a judgment, order, or decree, and attack its validity by appealing therefrom, unless the right to appeal under such circumstances is given by statute. 3 *C. J.* 679, *Stewart v. McCaddin*, 107 Md. 314, 68 A. 571. But that rule does not apply where the right to the benefit received is conceded by the opposite party, or where the appellant would be entitled thereto in any event. 3 *C. J.* 680, 682.

In this case the statute which grants the right of appeal, chapter 406 of the Acts of 1931, also provides that: "An appeal shall not be a stay." It was decided in *Branch v. Indemnity Ins. Co.*, 156 Md. 482, 489, 144 A. 696, 698, that the Legislature was authorized to annex that qualification to the right of appeal, and, in announcing that conclusion, Judge Urner for this court said: "The right of the Legislature to provide that an appeal from a decision of the State Industrial Accident Commission shall not be a stay could not be denied, consistently with the principle upon which the general validity of the act has been adjudicated. Its design was to insure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payments of compensation awarded by the commission could be suspended because of an appeal. In providing that an appeal should not be a stay, the statute was simply adopting a necessary expedient to accomplish one of the important purposes for which it was enacted."

It is consistent with the record and all the evidence in the case that the appellant concedes that the claimant is entitled to compensation for a permanent disability resulting from fifty per cent. loss of the use of his leg. If the judgment had been affirmed he would have been entitled to that, and if it had been reversed on his appeal he would, upon the undisputed facts shown by the transcript of record from the State Industrial Accident Commission, have been entitled to no less. The whole issue in the case was not whether he had lost less than fifty per cent. of the use of that leg, but whether he had lost more than fifty per cent. of the use thereof.

The payments made by the appellee pending the appeal were therefore payments which in any event it was bound to make, and it suffered no possible prejudice from their acceptance by the claimant. Construed in connection with the principle that the general rule that one cannot take the benefits under a judgment, order, or decree, and at the same time attack its validity, does not

apply where the right to the benefits actually received is conceded by the opposite party, the language of the statute, that an appeal shall not be a stay, applies at least to that extent to cases where the employee appeals as to those in which the employer appeals. Any other conclusion would be wholly inconsistent with the legislative intent as declared in the Workmen's Compensation Act (Code, art. 101, as amended), as well as with the construction placed upon that part of it in *Branch v. Indemnity Ins. Co., supra.* The motion to dismiss was therefore properly overruled.

The second question presented by the record is whether the court erred in granting this issue, "If the jury answers 'Yes' to the employer's issue, then to what extent is the claimant disabled?" The employer's issue was: "Is the claimant, Ira Mayo, permanently partially disabled in his left leg in excess of 50 per cent loss of use?" It is apparent from a comparison of those issues that, while the employer's issue limited the inquiry to the effect of the injury on claimant's left leg, which was the only question before the commission, the court's issue was directed to a general disability, a question which was never in the case. But as no objection on that ground to the rulings on the issues was made in this court, that particular objection will not be considered. Rule 39, Court of Appeals of Maryland.

The third question in the case arises from the action of the court in granting the court's issue, and the claimant's first prayer. Together, the issue and the prayer permitted the jury to determine to what if any extent in excess of fifty per cent. the claimant had lost the use of his left leg. Appellant contends that the jury should have been permitted to decide only whether the loss of use exceeded fifty per cent., but that it should not have been allowed to determine how much it exceeded fifty per cent., while appellee asserts the converse of that proposition.

Under the statute, Code, art. 101, sec. 56, (chapter 406, Acts 1931), the court upon appeal is directed to determ-

ine whether the commission has correctly "construed the law and facts," and upon the request of either party to submit to a jury "any question of fact" disclosed by the record. Since the commission is the original fact finding body, those provisions apparently mean that an issue of fact must originate with the commission, and cannot be raised for the first time before the court on appeal, for the court in such a case is only authorized to modify or reverse the award of the commission upon a finding that it has erred in construing the law or the facts. *Ibidem.* But, by the express terms of the statute, the court on appeal is directed to decide whether the commission has miscontrued the facts, and to submit any issue of fact to a jury. *McCulloh & Co. v. Restivo,* 152 Md. 60, 136 A. 54. Does that mean that the court and jury on appeal are confined to deciding only that the commission has or has not misconstrued the facts, but may not decide, in the event of a finding that it did miscontrue the facts, how it misconstrued them? Since the purpose of the act was to lessen litigation and not to increase it, it would seem that no such limitation on the court's powers was intended. Taking this case as an illustration, if that limitation were recognized there could possibly be fifty appeals before the only question of fact really involved in the appeal, the extent of claimant's loss of the use of his left leg, is decided. Certainly no such astonishing result was intended by the Legislature, and yet it would follow almost as of course if the sole function of the court and jury on appeal is to say "the Commission was right" or "the Commission was wrong." A more rational and sensible construction is that indicated in *Neeld Construction Co. v. Mason,* 157 Md. 571, 575, 146 A. 748, 749, where it is said: "The employer and insurer objected to the granting of the issue, as proposed by the claimant, in regard to the effect of the accident upon his heart, and one of their exceptions was reserved because of that ruling. As the specific inquiry involved in the issue was material to the ultimate determination of the case, we think it was properly granted. *Schiller v. Balto. & O. R.*

*Co.,* 137 Md. 235, 112 A. 272; *Owners' Realty Co. v. Bailey,* 153 Md. 274, 138 A. 235; *Armour Fertilizer Works v. Thomas, supra* [153 Md. 631, 139 A. 356]." Applying that language to this case, the ultimate fact to be decided was the extent of the loss of use of claimant's left leg. The commission found that to be fifty per cent., and in so finding the claimant's contention was that it misconstrued the facts. Those identical facts were before the court on appeal, and there is no apparent reason why it should not have been permitted to say how those facts should have been construed. Such a conclusion is not only consistent with the purpose of the statute, but seems imperative to give any meaning to its grant of power to the court to "modify" the award. The court's issue and claimant's first prayer were therefore not objectionable merely because they permitted the jury to find the extent to which the claimant's use of his left leg was lost as a result of the accident.

The third question submitted is whether there was in the case evidence legally sufficient to support a finding that claimant's permanent partial disability "exceeded 50 per cent. loss of use of his left leg."

At the time of his injury the claimant was employed as a blocker in appellant's wire mills. While so engaged, a wire caught him "by the right foot and beat him around the block and tore his left knee." As a result of that accident he suffered injuries which were thus described in the employer's report to the commission: "That the nature of the injuries was as follows: Crush of left knee; tear of crucial and lateral ligaments; possible fracture of upper end of tibia and lower end of femur." He was attended by Dr. F. E. Shaffer, and examined by Dr. F. S. Robertson.

Mayo himself gave the following description of his injury: "His left leg is stiff at this time in the knee and he cannot bear weight on it without a brace. The ankle is a little stiff now; he has not got good use of it as he should have. He wears the brace all the time except at night. It goes from his thigh to the bottom of his foot.

Before the accident, he had no trouble with that leg, it was normal and in good shape. * * * As regards the condition of his leg, he can get along better with the brace than without it. When he sits down, he has to have it up on something; he cannot sit back in a chair. He has been working in the steel plant going on five years and has no trade. He cannot do the ordinary work about the floor, such as walking about and carrying materials. His present job is one where he sits down and does piece work."

Dr. Robertson, who examined him in January, 1934, gave this description of the injury as it appeared at that time: "Examination of the left leg showed the leg in a steel brace which extended from the groin down to and supporting the foot. The brace was removed for examination and showed the muscles of the leg considerably atrophied. Knee joint was almost completely ankylosed. Scar on the leg, rather a horse shoe shape, extending from just above the internal condyle of the lower border of the femur downward and below the patella and extending upward to just above the external condyle of the femur. The knee showed just a little swelling or fullness around the lower border of the patella. No sign of inflammation or infection. He had practically the loss of use of the knee as far as function was concerned. There was some slight flexion there. The lateral motions were abnormal, they were marked, more so than in the normal knee. * * * A man to be employed in a steel mill doing similar work he was doing at the time he was hurt. I cannot say the leg is any use to him at all. He has practically got one hundred per cent. loss of use of the leg"— and added, when asked whether claimant was one hundred per cent. disabled in that leg for the ordinary use "he might have of" it around a steel plant, "Yes, for any laboring work. If the man had a position where he could sit down, he would probably be able to earn as much as he ever did and maybe more." On cross-examination he said that claimant "has a good weight bearing member." In his "report" the same witness said: "Examina-

tion of left leg shows a steel brace extending from the groin to the foot; this was removed for examination. Examination shows muscles of thigh and leg considerably atrophied, knee joint almost completely ankylosed. There is a horse shoe scar of the knee extending from just above the internal condile of the femur downward and below the patella and extending upward to just above the external condile of the femur; this scar, I understand, is the remains of the operation in which the semi-lunar cartilage was removed. There does not seem to be any inflammation around the joint; there is some slight fullness around patella. He is not able to flex the knee but a very small degree and this with the aid of assistance. The lateral movement is abnormal due, no doubt, to the loss of the cartilage."

Dr. Shaffer expressed a different opinion. He said: "He thinks the degree of permanent disability in the leg is about fifty per cent. loss of use. It is a good weight-bearing member. Movements of the hip and ankle were all right. There was some little restriction of the foot—the claimant had been in a cast for a long time and is now using a brace. Witness thinks it will be impeded again somewhat. "Q. In regard to occupation, doctor, this man's occupation is a reel maker and blocker, what do you think of his ability as regards performing those duties with his member as it is at the present time? A. I don't know the minute details of either one of the jobs mentioned, but he can do something; he can walk, and I believe he could do a walking or standing job better than a sitting down job. He has ankylosis of the knee with just this slight motion." And on cross-examination he said: "Doctor, you say fifty per cent. loss of use. Did you arrive at that conclusion based on any scientific fact or is it simply an opinion? A. That was the opinion I had at the time. Here was a man who could walk on his knee, he had use of the ankle and had use of his hip."

The question submitted by appellant's demurrer prayer was not whether that evidence was legally sufficient to support a finding that claimant had lost one hundred per

cent. of the use of the leg, but whether it was legally sufficient to permit a finding that he had lost more than fifty per cent. of its use. It may well be assumed that claimant did not lose one hundred per cent. of the use of the leg, for his own admissions showed that, but that question is not presented by the record. On the other hand, it cannot upon the evidence be assumed as a matter of law that he did not lose more than fifty per cent. of its use. Of the two physicians who testified, one said that, for work similar to that in which claimant was employed when he was injured, the leg was useless, because it would be impossible for him to carry on a job where he either had to stand or walk; the other said he could do a "walking or standing job better than a sitting down job," and that he had only lost fifty per cent. of the use of the leg, apparently because he could "walk on his knee" and "had use of the ankle and had use of his hip." It was shown without contradiction that he was a laborer and without a trade.

It cannot upon those facts be said as a matter of law that he had not lost more  than fifty per cent. of the use of his leg. There can be in such a case no arbitrary inflexible formula for calculating with mathematical precision the exact percentage of the loss of use occasioned by the injury. Within certain minimum and maximum limits fixed by the facts, the former that he had lost some use of the leg, the latter that he had not lost the entire use of it, the extent of the loss was necessarily a matter of opinion to be decided by the triers of facts in accordance with the instructions of the court. Upon the facts it was quite as permissible for the jury to fix the percentage of loss as for the commission. The best and the most that either could do was to construe the facts in the exercise of a sound and reasoned discretion.

It is conceded that the facts of this case were sufficient to support a finding that the claimant had lost fifty per cent. of the use of his leg, but there is nothing in those facts to justify the presumption that as a matter of law they permitted no rational inference that the loss of use

was greater or less than that or that that finding was necessarily correct. Upon those facts there may well have been reasonable and honest differences of opinions as to the extent of the injury, and it cannot be said with certainty that a finding that loss of use was more than fifty per cent. was more unreasonable than a finding that it was precisely fifty per cent. The evidence which permitted an inference that claimant lost fifty per cent. of the use of the leg cannot possibly be said to be legally insufficient to permit an inference that he lost fifty-one per cent. or fifty-two per cent. of such use.

There was, therefore, no error in the refusal of appellants' A, or demurrer, prayer.

Finding no error in the rulings involved in the exceptions argued in this court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*