## CABELL CONCRETE BLOCK CO. ET AL. *v.* YARBOROUGH

[No. 84, October Term, 1948]

362

*Decided February 16, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hall Hammond* and *O. Bowie Duckett* for the appellants.

*Paul Berman*, with whom were *Sigmund Levin* and *Theodore B. Berman* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is a proceeding under the Workmen's Compensation Act, Code Supp. 1947, art. 101, § 1 et seq., brought

by Kenneth Yarborough, a laborer, age 45, to recover compensation for a disability which he sustained while employed by Cabell Concrete Block Company in its yard on Childs Street in Baltimore.

The accident occurred on July 14, 1947. About 7 a. m. claimant and another employee named William Ephrain were unloading bags of cement from a truck, known as a dinkey, and stacking them on piles. Just as they were swinging one of the bags toward the top of one of the piles, claimant's left foot gave way, and he fell heavily on the dinkey. His left side struck the battery, which generated the electric current for the operation of the dinkey, and his head struck the iron frame of the battery. Ephrain helped him up. About ten minutes later, while Ephrain was in the shed, several other workmen were attempting to assist claimant to walk, but he collapsed. When Ephrain came out of the shed and saw claimant sitting on the ground, he put him on his shoulder and carried him to his home several blocks away. When the manager of the company arrived at the plant several hours later, and was informed of the accident, he made arrangements to have claimant taken to Mercy Hospital in an ambulance. Claimant remained in the hospital only a few hours, but he has been confined to his home ever since.

Dr. Walter S. Taylor, claimant's physician, who examined him on July 22, filed a report with the State Industrial Accident Commission in which he described the disability as left hemiplegia. He testified before the Commission that claimant had described how he had fallen and struck his head, and from the history of the case and his examination he reached the conclusion that the blow on claimant's head caused his cerebral hemorrhage, and that the hemorrhage had caused the paralysis. On the contrary, employer's physician, Dr. Daniel J. Passagno, who examined claimant on December 6, 1947, reached the conclusion that he had suffered a spontaneous hemorrhage, and that the hemorrhage, and not the fall, had caused the paralysis. He admitted on cross-examination,

however, that he would change his opinion if he were certain that claimant's blood pressure was not high at the time of the accident. On February 17, 1948, Dr. Charles Bagley, Jr., a brain specialist, examined claimant at the request of the Commission, and found that he had high blood pressure on that day. He expressed the opinion that an elevation of blood pressure at the time of the accident, along with strenuous exertion and the blow to the head may have caused the paralysis.

Employer's insurer, Fidelity & Casualty Company of New York, contested liability on two issues:

(1) Whether the claimant met with an accidental injury arising out of and in the course of employment.

(2) Whether the disability was the result of an accidental injury arising out of and in the course of employment.

On February 28, 1948, the Commission found (1) that claimant sustained an accidental personal injury arising out of and in the course of his employment, and (2) that his permanent total disability was the result of the injury. The Commission thereupon awarded claimant compensation at the rate of $25 per week during the continuance of permanent total disability, not to exceed $7,500.

Employer and insurer appealed from the Commission's award to the Superior Court of Baltimore City. There the judge submitted the following issues to the jury:

(1) Did claimant sustain an accidental injury to his head arising out of and in the course of his employment?

(2) If the answer is "Yes," then is claimant permanently and totally disabled as a result of his accident?

The jury answered "Yes" to both issues. The Court accordingly entered judgment affirming the Commission's award. From that judgment employer and insurer brought this appeal.

*First.* Appellants requested the trial judge to instruct the jury that their answer to the second issue should be "No." They contend that the judge erred in refusing to give that instruction. It is an established rule that the fact that an employee was suffering from a diseased or

infirm condition does not necessarily bar him from a right to workmen's compensation in case of an accidental injury, but an award of compensation may be had in case of a disability proximately caused by an accidental injury, which arose out of and in the course of his employment, and which accelerated or aggravated an existing disease or infirmity. *Dickson Construction & Repair Co. v. Beasley,* 146 Md. 568, 126 A. 907; *Standard Gas Equipment Corporation v. Baldwin,* 152 Md. 321, 136 A. 644; *Armour Fertilizer Works v. Thomas,* 153 Md. 631, 139 A. 356.

In *J. Norman Geipe, Inc., v. Collett,* 172 Md. 165, 169, 170, 190 A. 836, 839, 109 A. L. R. 887, 890, where a truck driver suffered a cerebral hemorrhage on Monument Street in Baltimore, after he saw a man jump off a truck in front of him, and he made an effort to avoid striking the man, this Court held that paralysis resulting from the hemorrhage was an accidental injury arising out of his employment. In sustaining the judgment of the trial court allowing the claimant compensation for the paralytic stroke, Judge Parke said: "In the opinion of the medical expert who testified in his behalf, the claimant had an excessive blood pressure and premature hardening of the arteries. So, if he had suffered a stroke of paralysis while napping and resting at Wilmington, or while uneventfully driving to Baltimore, a paralysis occurring would have been a natural and probable result of his impaired physical health, and so would have possessed none of the essentials of an accidental happening. Paralysis, as the expert testified, could have been normally expected to happen at any time, yet its actual occurrence might have been long deferred. The disease or malady, however, did not run its natural and anticipated course. The claimant was precipitated into paralysis as the result of an accident."

In the case before us claimant and his fellow employee were lifting a bag of cement that weighed 94 pounds, and were in the act of swinging it upon a pile of other bags. Claimant testified that he slipped, and after he

struck the dinkey, his leg and side hurt him and he had a terrific headache. He also testified that he had never suffered any attacks prior to the accident. In view of claimant's positive testimony, supported by the testimony of his fellow employee and his physician, we hold that the trial judge was correct in refusing to instruct the jury that claimant's disability was not the result of the accidental injury.

Appellants urge that Dr. Taylor, claimant's physician, is merely a general practitioner of medicine, while Dr. Bagley, whose opinion was different, is a brain specialist. However, Dr. Taylor is a graduate of the Medical School of the University of Pennsylvania, and has practiced medicine about 35 years. He was qualified by study and experience to express an opinion on the subject. When a case is tried before a jury on appeal from a decision of the Industrial Accident Commission, the judge has no right to control the exercise of the jury's function to weigh the credibility of the evidence. On an appeal from a decision of the Commission, the judge, in determining whether he should direct a verdict in favor of the employer, must assume the truth of the evidence presented by the employee, although it may be contradicted in many of its material facts. *Spencer v. Chesapeake Paperboard Co.*, 186 Md. 522, 47 A. 2d 385; *Bethlehem-Sparrows Point Shipyard v. Scherpenisse*, 187 Md. 375, 50 A. 2d 256, 261.

*Second.* Appellants contend that the trial judge erred in refusing the following two issues:

(1) Did claimant have any physical infirmities or disabilities, such as high blood pressure, prior to and at the time of his alleged accident?

(2) If claimant is permanently and totally disabled, then what percentage of the disability is the result of his prior physical infirmities or disabilities, and what percentage is the result of the accident?

In March, 1931, the Commission appointed by Governor Ritchie to make recommendations for legislation to correct any defects in the Workmen's Compensation

Act recommended that statutory provision be made for excluding from compensation coverage "that portion of disability due to a combination of disease and accident which cannot be attributed solely to the accident." Various recommendations of the Commission were adopted by the Legislature by the passage of an Act re-enacting the section entitled "Claims and Compensation; Benefits." This Act, which was approved by the Governor on April 17, 1931, contains the following provision for apportionment of disability, which is still embodied in the Act: "Whenever it shall appear that any disability from which any employee is suffering following an accidental injury, is due in part to such injury, and in part to a pre-existing disease or infirmity, the Commission shall determine the proportion of such disability which is reasonably attributable to the injury and the proportion thereof which is reasonably attributable to the pre-existing disease or infirmity, and such employee shall be entitled to compensation for that proportion of his disability which is reasonably attributable solely to the accident and shall not be entitled to compensation for that proportion of his disability which is reasonably attributable to the pre-existing disease or infirmity." Laws of 1931, ch. 363, Code Supp. 1947, art. 101, sec. 35(6).

In 1931 the Legislature inserted in the Workmen's Compensation Act the provision that whenever any person who has suffered the loss, or loss of use, of a hand, arm, foot, leg, or eye, shall enter into a contract of employment, it shall be permissible for the employee to waive in writing any right to compensation to which he would be entitled because of the pre-existing permanent partial disability, in the event of subsequent accidental injury. If the employee signs such a waiver, and afterwards suffers an additional injury, he is entitled to compensation only for the disability resulting solely from the additional injury. Laws of 1931, ch. 363; Laws of 1937, ch. 329, Code Supp. 1947, art. 101, sec. 35(1). In *Paul v. Glidden Co.*, 184 Md. 114, 119, 39 A. 2d 544, 546, where an employee, who had lost the first and second

fingers of his left hand in a previous accident, lost the third and fourth fingers, thereby suffering permanent partial disability of the hand, and this Court held that, since there had been no waiver, the employee was entitled to compensation for the disability resulting from both accidents, Chief Judge Marbury said: "It is reasonable to suppose that the Legislature intended to give an employer an opportunity to protect himself in those cases where the disability was apparent. If he did not, then he would have to pay compensation without respect to pre-existing loss or loss of use. In other cases, where disability due to pre-existing disease or infirmity is not apparent, the employer is protected by the apportioning clause."

The Maryland Legislature has directed that, on an appeal from a decision of the Industrial Accident Commission, the Court shall determine whether the Commission has correctly construed the law and facts, and upon motion of either party shall submit to a jury any question of fact disclosed by the record. Code Supp. 1947, art. 101, sec. 57. As the Commission is the original fact-finding body, an issue of fact must originate with the Commission, and cannot be raised for the first time before the Court on appeal, for in such a case the Court is authorized only to modify or reverse the decision of the Commission upon a finding that it has erred in construing the law or the facts. *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 416, 177 A. 910. However, the rule that no issue of fact can be submitted on appeal where the record does not show that the question involved was before the Commission does not mean that a formal issue, specifically directed to the question, must be presented first to the Commission, but means merely that there must have been at least evidence before the Commission which would give it the opportunity to pass upon the question. *Jackson v. Bethlehem-Sparrows Point Shipyard,* 189 Md. 583, 589, 56 A. 2d 702, 705.

Appellants rely upon the report of Dr. Bagley filed with the Commission after he examined claimant on

February 17, 1948. Dr. Bagley gave his opinion that claimant had a spontaneous cerebral hemorrhage, and that this hemorrhage may have been precipitated by three conditions: (1) elevation of blood pressure, (2) active exercise in pitching bags of cement, and (3) a jar to the head sustained when he fell and struck his head. In commenting on these three possibilities, Dr. Bagley said:

"(1) Although there is no history of an elevated blood pressure at the time of the accident, the pressure reading today is 200/135, even though the patient has been quiet since the time of the accident.

"(2) The active exercise in the pitching of bags of cement at the time his foot slipped would perhaps have increased his pressure over what it had been at the time he engaged in the work.

"(3) Assuming that his statement is correct concerning striking his head when he fell, concussion may have further influenced the local condition and helped bring about the actual break in the vessel which was under strain from within. From the patient's description of his first fall when he struck his head, there was apparently an interval of ten minutes before he collapsed and fell backward."

Claimant makes the contention, with which the writer of this opinion agrees, that Dr. Bagley's report mentions elevation of blood pressure merely as one of the possible causes of the disability, and there was actually no evidence that claimant was afflicted with high blood pressure or any other pre-existing disease or infirmity. Moreover, Dr. Passagno, employer's physician, who examined claimant about five months after the accident, admitted that he had never tested claimant's blood pressure at all, and merely assumed that he had high blood pressure at the time of the accident from the fact that Dr. Bagley found that he had high blood pressure seven months after the accident. The writer of this opinion, therefore, thinks the trial judge was right in refusing to submit an issue as to apportionment of disability for the reasons (1)

that the only questions before the Commission were whether claimant suffered an accidental injury arising out of and in the course of his employment, and whether his disability was the result of the accidental injury, and (2) that there was no evidence before the Commission which gave it the opportunity to pass upon the proportion of disability which was reasonably attributable solely to the accident and the proportion of the disability which was reasonably attributable to pre-existing disease or infirmity.

The majority of the Court, however, accepts the view of appellants that, although there was no history of any pre-existing disease or infirmity, Dr. Bagley was of the opinion that elevation of blood pressure may have been one of the causes that precipitated the hemorrhage, and therefore there was sufficient evidence before the Commission to give it the opportunity to make an apportionment.

The judgment of the Court below will therefore be reversed, and the case will be remanded for a new trial.

*Judgment reversed and case remanded, with costs.*