CALED PRODUCTS CO., INC., ET AL. *v.* SAUSSER

[No. 122, October Term, 1951.]

*Decided March 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Vivian V. Simpson* and *Joseph B. Simpson*, with whom were *Simpson and Simpson* and *Charles B. DeShazo*, on the brief, for appellants.

*Cornelius H. Doherty,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Fred C. Sausser, age 36, a shipping clerk, is claiming workmen's compensation for a ruptured intervertebral disc, which disabled him on August 8, 1950, while he was employed by Caled Products Company, Inc., at its plant on the Bladensburg Road in Prince George's County.

His claim was disallowed by the State Industrial Accident Commission on the ground that he did not sustain an accidental injury. He appealed to the Circuit Court for Prince George's County, where the following issue was submitted to the jury: Did the claimant sustain an accidental personal injury arising out of and in the course of his employment on or about August 8, 1950? The jury answered "Yes." The Court thereupon overruled a motion of the employer and its insurer, United States Fidelity and Guaranty Company, for judgment n .o. v., and entered a judgment declaring that claimant suffered an accidental personal injury on or about August 8, 1950, reversing the order of the Commission, and remanding the case for an award of compensation. From that judgment the employer and the insurer appealed to this Court.

The employer is engaged in the business of making liquid soap for dry cleaning. Claimant's job was to superintend the unloading of drums of oils and fats and the handling of cartons of liquid soap for shipment. While he was the foreman of a crew, he himself usually lifted many drums and cartons during the course of a day. Most of the oils and fats arrived in five-gallon drums, which claimant and his crew unloaded and stacked in the storage room. After the soap was bottled, the bottles were put in cartons which weighed between 45 and 60 pounds.

Just before claimant was disabled, he was attaching a metal label on each of the cartons before they were put on the hand trucks to be pushed to a motor truck for shipment to a customer in New York. As he stooped to pick up a carton, he was seized with a very severe pain

in his back.  Made sick by the pain, he rested for about a quarter of an hour.  When he was asked by the secretary of the company what had happened, he replied: "Something wrong with my back.  I do not know whether it is kidney trouble, just what the trouble is."

That evening he went to see his physician, Dr. Aaron Deitz, who found no kidney disturbance, but advised him to have an X-ray examination to determine whether or not he had a ruptured intervertebral disc.  The X-rays did not reveal any traumatic injury, but did reveal an arthritical condition.  Claimant underwent an operation in a hospital in Washington on December 6, 1950.  He was put in a cast for two months, and was totally disabled until June 1, 1951.

In *Kelly-Springfield Tire Co. v. Daniels,* 199 Md. 156, 85 A. 2d 795, where the claimant suffered a ruptured intervertebral disc, we held that, since he had no fall, slip, or other accident, he did not sustain an accidental injury.  The rule in Maryland, as we stated in that case, is that the sudden and unexpected rupture of some portion of the internal structure of the body, or the failure of some essential function of the body, is an "accidental injury" within the meaning of the Workmen's Compensation Act only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment.

In the case before us there was no unusual condition in the employment when claimant was seized with the disabling pain.  The work he was performing was the customary work he had been doing ever since he started working for the company in 1945.  Each carton contained four one-gallon cans.  The cartons were of the same size and weight as those which he had been handling for five years.  Accordingly he was not subjected to any unusual strain or exertion.  The evidence is also uncontradicted that he did not fall or slip.  Douglas Lamond, one of his crew, who was helping to stack the cartons, testified that nothing unusual happened except that claimant "got a pain in his back."  Another witness, Andrew Lyons,

Jr., testified that he was working in the motor truck at the time and thus did not see anything happen, except that when he came into the room claimant was "bent over." Claimant himself admitted that he did not recall that he had hurt himself in lifting any of the cartons on August 8, 1950, or that he had any accident or injury two months before, when he noticed a pain in his left leg.

Dr. Deitz testified that during a period of several years he had treated claimant about five times for low lumbar pain. He said that, while it was possible that claimant's condition was a consequence of the heavy lifting, he did not think the weight of the cartons he was lifting on August 8 was material. He explained that a person may have a ruptured disc for six or eight months, or even for as long as two years, before there is more than a low lumbar pain, and during that time leaning over to tie a shoe or to lift a box might cause his back to hurt; but gradually the disc, when it begins to move back and forth, gets against the nerve, causing acute pain.

Dr. Harold L. Sharpes, chiropractor, testified that he gave claimant a treatment for pain in his left hip in August, 1948, nearly two years before the disability, and again on June 5, 1950, about two months before the disability. He attributed the pain to an impingement of the nerve.

Dr. James W. Watts, neurosurgeon, testified that claimant told him on September 7, 1950, that he had pain in his left leg several months before he was disabled, and that his chiropractor had given him considerable relief. Dr. Watts expressed the opinion that it was possible that the disc had been ruptured some time prior to August 8, 1950.

Dr. Hugh Fulcher, professor of neurological surgery in the Medical School of Georgetown University, also believed that the disc was not ruptured on August 8, 1950, for the reason that "it takes about five to seven days for this soft, butter-like substance to harden sufficiently to pinch the nerve." He recalled claimant's statements

on September 26, 1950, as follows: "At that time the patient stated that during June, 1950, he had begun to suffer with some pains on the left thigh; that these pains were of the dull, aching type, and were relieved somewhat by lying down. He stated that he was worse during the morning, and that very frequently he would have difficulty in putting on his left shoe. * * * He complained also at that time of some difficulty in driving his car to work in the morning, he would have some pain, but after he would once get limbered up at work, he stated that he would be able to carry on in a satisfactory manner."

Dr. Harold A. Wood, general surgeon, was also of the opinion that there was no causal connection between claimant's work on August 8, 1950, and the ruptured intervertebral disc, but that the disc had been ruptured as far back as 1946, probably without severe injury. He emphatically stated that "there was no more accident or injury at the time he attempted to lift the box than there was when he attempted to place his stocking on his foot." He then added: "These disc can come without an injury at all, from constant irritation to this particular area, from constant hard work; it begins to break down, and you have a disc, with no history of an injury at all. I felt from the history * * * that the fact that in August * * * he had a severe pain * * * was just coincidental, * * * because when we find a patient having these attacks in the middle of the night, in bed, or having them for some unknown reason that we cannot account for, it is pretty hard to put your finger on something that the person was doing at that particular time, and honestly say that he had an accident. I just could not do it."

The Workmen's Compensation Act provides for payment of compensation for the disability or death of an employee resulting from an "accidental personal injury" sustained by the employee arising out of and in the course of his employment. Code Supp. 1947, art. 101, sec. 14. The Act defines the term "accidental personal injury" as meaning "accidental injuries arising out of and in the

course of employment and such disease or infection as may naturally result therefrom * * *." Code Supp. 1947, art. 101, sec. 67 (amended by Laws 1951, ch. 289). We have held that an "accidental personal injury" is a physical injury which is caused by some unusual condition or occurrence in the employment and which is associated in some degree with the elements of force, violence and surprise. *State Roads Commission v. Reynolds,* 164 Md. 539, 546, 165 A. 475; *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.,* 164 Md. 671, 680, 166 A. 39.

We recognize that under the facts in some cases a gradual development of a traumatic injury or condition may be found to constitute an accident within the meaning of the Workmen's Compensation Act. For instance, in *Foble v. Knefely,* 176 Md. 474, 6 A. 2d 48, 122 A. L. R. 831, where there was evidence that the claimant's knee had been bruised by the operation of a knee press, which was badly adjusted and hard to operate, but the injury which finally caused acute inflammation was sudden and was caused by the press plate slipping around the rod to which it was fastened, the Court held that the evidence was sufficient to require submission to the jury of the issue whether the disability resulted from an accidental injury.

That case is quite different from the present case, where the claim for compensation was for only an accidental injury on August 8, 1950. As the Industrial Accident Commission is the original fact-finding body, an issue of fact must originate with the Commission, and cannot be raised for the first time before the Court on appeal, for the Court is authorized in such a case only to modify or reverse the decision of the Commission upon a finding that it has erred in construing the law or the facts. Code Supp. 1947, art. 101, sec. 57; *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 416, 177 A. 910; *Cabell Concrete Block Co. v. Yarborough,* 192 Md. 360, 64 A. 2d 292; *Benoni v. Bethlehem Fairfield Shipyard,* 188 Md.

306, 52 A. 2d 613; *Jackson v. Bethlehem-Sparrows Point Shipyard,* 189 Md. 583, 56 A. 2d 702.

In this case claimant started to work for the employer in 1945. The cartons he was lifting on August 8, 1950, were no larger or heavier than those he had been lifting for five years. As there was no unusual condition in the employment on the day he was disabled, but the work he was performing was his customary work, and as he was not subjected to any unusual strain or exertion, and did not sustain an accident of any kind, there was no evidence that he sustained an accidental personal injury arising out of and in the course of his employment. We must, therefore, reverse the judgment of the Court below and remand the case for the entry of a judgment affirming the order of the Commission.

*Judgment reversed and case remanded, with costs.*