OTHO CLYDE SMITH *v.* GENERAL MOTORS ASSEMBLY DIVISION

[No. 696, September Term, 1972.]

*Decided July 18, 1973.*

The cause was argued before ORTH, C. J., and POWERS and SCANLAN, JJ.

*Marvin B. Steinberg*, with whom were *Gomborov, Steinberg, Schlachman & Harris* on the brief, for appellant.

*Daniel E. Klein, Jr.*, with whom were *Klein, Harlan, Stein & Jett* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

This appeal grows out of a claim filed by Otho Clyde Smith with the Workmen's Compensation Commission. The Commission denied the claim, finding that he did not sustain

an accidental injury arising out of and in the course of his employment. He appealed to the Superior Court of Baltimore City, where the case was tried without a jury. The only issue was whether the claimant sustained a compensable injury.

Smith, an employee of the General Motors Assembly Division in Baltimore, testified that while he was driving to work at about 2:00 P. M. on 25 July 1971, a van truck changed lanes and cut him off. A few blocks farther, as he approached the truck to attempt to pass, it pulled over and cut him off again. Still farther along the street the claimant succeeded in passing the truck, and pulled in front of it. When he reached the private entrance to the General Motors parking lot, he pulled in, parked on the lot, and got out of his car.

Smith further testified that the truck followed him onto the lot, and pulled up behind him. A man got out, came over to him and said, "Is that the way you drive all the time? ". Smith said, "No, how about yourself? ". He then turned and got his lunch out of his car, and locked it. As he turned around the man struck him, knocking him unconscious. Smith sustained fractures above and below the right eye, and a fractured nose. He was taken to the hospital, where he remained 10 days.

The evidence further showed that Smith was to start work at 3:00 P.M., that the assault took place at about 2:20 or 2:30, and that the lot was provided by General Motors for its employees. It was not necessary to cross any street to get from the lot to the plant. Smith acknowledged that before the Commission he had stated that when he pulled in front of the truck he "slowed him down". In his testimony before the court Smith agreed that he could have slowed the truck down a little bit, but that he did not do so deliberately.

Another witness, who was sitting in his car on the lot nearby, described the beating of Smith by the man from the truck. He did not see or hear anything that Smith did that would provoke the attack.

The claimant closed his case. The employer moved for a

directed verdict. The court granted the motion. Judgment nisi and thereafter judgment absolute were entered in favor of General Motors. Smith appealed.

The Commission's denial of the claim was based solely on appellant's own direct testimony. The Commissioner said:

> "No Cross Examination necessary. The claim is disallowed; it has nothing to do with employment whatsoever. It's not even an accident."

There was not, nor could there be, any finding of disputed facts by the Commission. Its order resulted from its application of what it conceived to be the law to the facts as presented by the appellant on the only issue on which the Commission received evidence.

Upon review, the court below was limited to a determination of that single issue, either as a matter of law, if the Commission had correctly construed the law, or, if the court found that the Commission had "misconstrued the law", Code, Art. 101, § 56 (a), then as an issue of fact upon evidence offered by both parties. The court could not have resolved any other disputed issue of fact, since the Commission did not do so. As the Court of Appeals said in *Cabell Concrete Block Co. v. Yarborough*, 192 Md. 360, 64 A. 2d 292, at page 369:

> "As the Commission is the original factfinding body, an issue of fact must originate with the Commission, and cannot be raised for the first time before the Court on appeal, for in such a case the Court is authorized only to modify or reverse the decision of the Commission upon a finding that it has erred in construing the law or the facts."

See also *Trojan Boat Co. v. Bolton*, 11 Md. App. 665, 276 A. 2d 413.

As we have said, when the appellant closed his evidence before the court, the employer moved for a directed verdict. After a lengthy discussion among the judge and both counsel, the judge ruled, "The motion is granted for a directed verdict". As it was in the beginning, is now, and (it

seems) ever shall be in non-jury trials, the motion for a directed verdict was improperly employed. It should have been a motion to dismiss. Maryland Rule 535. We shall treat it as such. *Reece, Adm'r. v. Reece,* 239 Md. 649, 656, 212 A. 2d 468.

Without repeating it here, we urge all to whose attention these words come to read what Judge McWilliams said for the Court of Appeals about Rule 535 in *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 569-570, 270 A. 2d 476.

In dealing with the motion before it the lower court was required to assume the truth of all of the evidence tending to sustain the claim. *Spencer v. Chesapeake Paperboard Co.,* 186 Md. 522, 47 A. 2d 385, *Cabell Concrete Block Co. v. Yarborough, supra; Superior Builders, Inc. v. Brown,* 208 Md. 539, 119 A. 2d 376. The only question before the court was one of law. As did the Commission before it, the court misconstrued the law.

Appellant contends that his right to compensation flows from Code, Art. 101, § 15, read in the light of § 67 (6), as both have been interpreted by controlling appellate decisions. Section 15 in effect at the time provided, in part:

> "Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty."

Subsection (6) of § 67 contains this definition:

> " 'Injury,' 'personal injury,' 'accidental injury' and 'accidental personal injury' means only accidental injuries arising out of and in the course of employ-

ment and such occupational disease or infection as may naturally result therefrom, including frostbite and sunstroke resulting from weather condition, and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

The answer to this case comes loud and clear from the opinion written in 1967 by Chief Judge Hammond for the Court of Appeals in *Giant Food v. Gooch*, 245 Md. 160, 225 A. 2d 431. Gooch worked for Giant Food as a parking lot attendant and parcel pick-up man on the parking lot. His regular routine each morning was to punch his time card at eight o'clock, get his shovel and broom, and begin to clean the lot. On the morning of his injury, he drove to the parking lot, and as he was locking his car one Jones, mistakenly believing Gooch to be Mrs. Jones's paramour, approached him with a gun. Gooch fled with Jones in pursuit and after they had gotten behind the store, Jones shot Gooch and injured him.

In holding that the trial judge, in approving an award of compensation, correctly construed the statute, the Court of Appeals said, at page 164:

"Sections 15 and 67 (6) must, as is entirely possible, be read together and harmonized so as to give effect to the purpose of each, as expressed in its phraseology. So read, the legislature provided several classes of compensable accidental injuries. One was the run of the mine one provided for in § 15 — 'an accidental personal injury * * * arising out of and in the course of * * * employment.' This class of 'injury,' 'personal injury,' 'accidental injury' and 'accidental personal injury' was redefined in § 67 (6) as the primary class and there were added by that section two other defined classes: first, 'such occupational disease and infection as may naturally result therefrom' (including frostbite and sunstroke resulting from weather condition) and, second, 'an injury caused by

the wilful or negligent act of a third person directed against an employee in the course of his employment.' Thus, in the context here pertinent, we read §§ 15 and 67 (6) together to mean that every employer shall pay compensation (1) for the disability or death of his employee resulting from an accidental personal injury arising out of and in the course of employment, and (2) for the disability or death of his employee caused by the wilful or negligent act of a third person directed against the employee while he is in the course of his employment."

After reviewing several decisions under the former law, and referring to the enactment in 1951 of the statute codified as § 67 (6), the Court said, at pages 165 and 166:

"It is only reasonable to infer, therefore, that the legislature when it said that accidental personal injury as defined and made compensable by § 15 of Art. 101 was also to include 'an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment' intended to broaden the scope of the compensation statute to include as compensable an injury not attributable to the working environment provided it was incurred in the course of employment.

"This conclusion is fortified by another facet of history. The bill which became Ch. 289 of the Laws of 1951 and now is codified as § 67 (6), as originally introduced in the legislature, contained this language: ' * * * and includes an injury caused by the wilful or negligent act of a third person directed against an employee *because* of his employment' (emphasis added), but during its passage the bill was amended to strike out the word 'because' and to substitute the words 'in the course.' This is a persuasive indication of legislative intent to insure that in the case of injury inflicted by a third person in the course of the worker's employment

> *there was to be no requirement that the injury arose out of the employment.* "(Emphasis added)

It has been held frequently that an employee is in the course of employment when he arrives on the employer's premises, including a parking lot provided for employees, ready to proceed or in the act of proceeding directly to work, without deviation. *Proctor-Silex v. DeBrick*, 253 Md. 477, 252 A. 2d 800, *Saylor v. Black & Decker Mfg. Co.*, 258 Md. 605, 267 A. 2d 81, *Pappas v. Modern Mfg. Co.*, 14 Md. App. 529, 287 A. 2d 798.

There is nothing in the opinion in *Giant Food v. Gooch, supra*, that even intimates that the holding in the case was affected by the fact that Gooch's ultimate duties, after punching the time card, would be performed on the parking lot, rather than elsewhere on the employer's premises.

The court below said that the Commission was correct in holding that the injury did not occur in the course of appellant's employment. It pointed out that the assault was precipitated by incidents that occurred earlier on public streets, and the fact that the assault occurred on the employer's property was purely incidental. It pointed out also that the appellant was not the innocent victim of an unprovoked attack, but a willing participant in a series of spiteful acts by two motorists.

Appellee argues that the situation is analagous to that in *Zentz v. Peters & Taylor, Inc.*, 11 Md. App. 1, 272 A. 2d 430. In that case we held that the evidence before the court below was legally sufficient to support its determination that the injury sustained by the claimant in a fight with a fellow employee on the job resulted solely from the intoxication of the claimant while on duty.

Section 15 of Art. 101, as we have quoted it, contains two exceptions to the right to compensation. One is intoxication, as we applied it in *Zentz*. The other applies when " * * * the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another * * * ".

Just as there is no requirement in the compensation law

that an injured employee be free of fault, there is no requirement that he be free of any other wrongdoing, short of the exceptions in § 15. We find nothing in *Giant Food v. Gooch, supra,* to indicate that the result would have been any different had Jones been right instead of wrong. Gooch's right to compensation did not turn upon his innocence, but on the fact that his injury was caused by the wilful act of a third person directed against Gooch while he was in the course of his employment. We need not decide whether there could be provocation so gross and so immediate as to show a wilful intention of an injured employee to bring about the injury or death of himself or of another; there certainly was no such provocation here.

The case must go back to the Commission so that it may hear any other evidence pertinent to the issues to be determined.

> *Judgment reversed.*
>
> *Case remanded to the Superior Court of Baltimore City, which shall remand the case to the Workmen's Compensation Commission, for further proceedings.*
>
> *Costs in this Court and in the lower court to be paid by appellee.*