Reba Romain *v*. Middletown Area School District.

Argued January 20, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Thomas D. Caldwell, Jr.,* with him *Caldwell, Clouser & Kearns,* for appellant.

*S. Asher Winikoff,* General Counsel, with him *Stanton W. Kratzok,* Special Assistant Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 22, 1971:

This is an appeal from the final order of the Pennsylvania Human Relations Commission issued pursuant to a complaint filed by Mrs. Reba Romain alleging that the appellant, the Middletown Area School District, was guilty of discrimination in employment because of race in violation of Section 5 of the Pennsylvania Human Relations Act. The Commission, through investigation, found probable cause to credit the allegations, and after a proper hearing concluded that an unlawful discriminatory practice had occurred. The order, therefore, requires the School District to employ Mrs. Romain, and to restructure their hiring practices to eliminate discrimination by, among other things, giving "first consideration for employment" to minority group applicants.

"The Court to which [an] appeal is taken [from the Human Relations Commission] shall hear the appeal

without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find . . . that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." Administrative Agency Law, 71 P.S. §1710.44; *Pennsylvania Human Relations Commission v. Brucker,* 93 Dauph. 8 (1970) ; *Human Relations Commission v. Altman,* 87 Dauph. 227, 42 D. & C. 2d 317 (1967). Upon examination of the record, we find that certain findings of fact necessary to support the Commission's conclusion that Section 5 was violated are not supported by substantial evidence. The adjudication of the Commission must therefore be reversed.

Section 5 reads as follows: "It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . (a) for any employer because of the race . . . of any individual to refuse to hire or employ . . . or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required." 43 P.S. §955.

The act of discrimination in hiring because of race must necessarily entail either the refusal because of race to hire the person found to be best qualified or the refusal because of race to find a person best qualified. Either situation involves the *motivation and determination by the hiring official* or body as to the applicant's qualifications.

The Commission found as a fact that Mrs. Romain was best qualified. The fact that the Commission's expert has found the complainant more qualified does not require that the School District come to the same conclusion, provided the opposite conclusion is not based on racial motivation.

The only evidence which would support the conclusion that the district found Mrs. Romain best qualified was the testimony that Mr. Sinner, the hiring official, would have found four hired applicants less qualified if the determination to hire was based on *his* analysis of the *applications alone*. There is no evidence, however, which could lead the Commission to conclude that the determination as to the quality of the applicants was in fact based only on Mr. Sinner's analysis of the applications or that another method used was racially motivated or that it found Mrs. Romain best qualified.

To the contrary, uncontroverted testimony shows that the applications were passed upon without any knowledge as to race by the principals and librarian under whom these employees would work and that these officials failed to recommend Mrs. Romain over any of the persons hired. Furthermore, Mr. Sinner testified that he found Mrs. Romain less qualified overall because of her work attitude in a less formal summer program run by the school.

We cannot nor could the Commission conclude that this procedure used by the School District to determine which applicants were "best able and most competent to perform the services required" found Mrs. Romain less able than the sixteen employees subsequently hired because of her race. The record of the Commission fails to contain *substantial* evidence upon which to conclude that the District found her qualified and fails to contain *any* evidence upon which to conclude that the District's findings were racially motivated. The order of the Human Relations Commission of April 27, 1970 is hereby reversed.

---

DISSENTING OPINION BY JUDGE MANDERINO:

This appeal is based on an adjudication by the Pennsylvania Human Relations Commission which found

that the Middletown School District had violated §5 of the Pennsylvania Human Relations Act by refusing to hire Reba Romain as a library aide in its Title I program because of her race. Section 5 reads as follows: "It shall be an unlawful discriminatory practice; unless based upon a bona fide occupational qualification, . . . (a) for any employer because of the race . . . of any individual to refuse to hire or employ . . . or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment, if the individual is the best able and most competent to perform the services required." Act of October 27, 1955, P. L. 744, as amended, 43 P.S. 955 (1970).

The Administrative Agency Law (Act of June 4, 1945, P. L. 1388, 71 P.S. 1710.44) states that a court hearing an appeal from the Human Relations Commission shall affirm the Commission's adjudication unless the court finds that any findings of fact made by the Commission necessary to support its adjudication are not supported by substantial evidence. The majority's reversal of the Commission's adjudication in this case is based on the belief that certain of the Commission's findings were not supported by substantial evidence. Substantial evidence has been defined as follows—"evidence sufficient to convince a reasonable mind to a fair degree of certainty." *P.L.R.B. v. Kaufman Dept. Stores, Inc.*, 345 Pa. 398, 29 A. 2d 90 (1942).

Obviously, the Commission's adjudication must stand or fall on its finding that Reba Romain was the individual "best able and most competent to perform the services required." The majority states that the only testimony which would indicate that Reba Romain was best qualified was that Mr. Sinner, an employee of the school district, would have found four other applicants who were hired, less qualified than Mrs. Ro-

main. However, this testimony should be more than sufficient to substantiate the Commission's finding since Mr. Sinner was the hiring official for the Middletown School District.

It is claimed that Reba Romain was not hired because of her past performance in another program in the school district. Reba Romain had been employed in the Middletown School District Head Start programs for two (2) years before she applied for the position in the Title I program. There was testimony relating to her absences and tardiness in connection with her employment in Head Start. However, the Middletown School District continued to hire Reba Romain in the Head Start program, even after she was refused the Title I position. Mr. Sinner in fact testified that Mrs. Romain was "as good or better than anyone else" for the Head Start position. It is difficult to reconcile this testimony with the testimony which refers to her performance in this job as unsatisfactory. In any event, the evidence is uncontradicted that the two programs (Head Start and Title I) are essentially different types of programs. Therefore, it is uncertain as to whether an evaluation of performance in one job would be a fair basis on which to project performance in the other. The Commission rejected the explanations offered. It is not for this court to overrule the Commission when matters of credibility are involved.

While racial motivation is practically impossible to affirmatively prove, the Human Relations Commission's finding that the school district's refusal to hire Reba Romain was racially motivated is based on "*substantial* evidence"—"evidence sufficient to convince a reasonable mind to a fair degree of certainty." The evidence presented before the Pennsylvania Human Relations Commission was more than sufficient to "convince a reasonable mind to a fair degree of certainty" that the

Middletown School District violated §5 of the Pennsylvania Human Relations Act in refusing to hire Reba Romain as a library aide.

The record reveals that thirty-seven (37) applications were received and that sixteen (16) people were hired. Reba Romain was not one of these sixteen (16) people, even though the record contains evidence that the hiring official himself acknowledged that Reba Romain was better qualified than at least four (4) other people who were hired. There is contradictory evidence in the record, but it is not the function of this court to resolve the contradictions. It is only for this court to determine whether or not the Commission abused its discretion.

As courts, we are constantly reminding ourselves that when reviewing the adjudication of an administrative agency, we are not to act as that administrative agency. The question before us is not what we would have concluded from the 162 pages of testimony presented before the Commission, but rather, whether such testimony contained evidence from which the Commission could have concluded that a violation of the law existed. The Human Relations Commission should not be treated any differently than other administrative agencies. Wide latitude is given to the administrative agency and its conclusions must not be overturned unless the court explicitly and specifically points out why the agency's conclusions are not substantiated.

In cases such as this, the record will seldom contain direct evidence of racial motivation. Racial motivation is a conclusion arrived at, and quite rationally, when there is evidence to show that the applicant was better qualified than others who were hired and the trier, in this case the Human Relations Commission, in its sound discretion, rejects the offered explanations.

Appellant also claims that the final order of the Human Relations Commission went beyond its authority. I would affirm the Commission's order except for that portion which orders a kind of reverse discrimination in the future so far as hiring minority group applicants is concerned. While such a remedy may be appropriate in some circumstances, this case is not one of them.