492

Shannon *v.* Civil Service Commission.

Argued October 22, 1971, before Judges Kramer, Manderino and Mencer, sitting as a panel of three.

*Ronald P. Koerner,* with him *Gatz, Cohen & O'Brien,* for appellant.

*Allen S. Wuchenich,* with him *Jones, Gregg, Cree-han & Gerace,* for appellee.

OPINION BY JUDGE KRAMER, February 24, 1972:

This is an appeal from an Opinion and Order dated May 24, 1971 of the Court of Common Pleas of Allegheny County affirming a "decision" of the Civil Service Commission (Commission) of the Borough of Whitehall, dated July 3, 1970. The Commission sustained the action taken by the Borough Mayor in suspending Paul J. Shannon (appellant) from his duties as a Borough policeman for a period of two days.

Although several procedural issues are raised on appeal, they need not be decided because this case can be determined finally by a holding of this Court on the merits of the case, i.e., whether the Commission abused its discretion in sustaining the two-day suspension of the appellant for "conduct unbecoming an officer." The court below received certain additional testimony, none of it, however, relevant to the merits of the case, and as indicated in the Opinion of the court below, none of it was utilized in arriving at the court's Order. In view of the fact that the court below did not take any additional testimony or receive any additional evidence on the merits,* the scope of review of this Court is to determine whether or not the Commission abused its discretion or committed an error of law. *Gabriele v. Boeing Company, Vertol Division,* 1 Pa. Commonwealth Ct. 96, 99, 272 A. 2d 527, 529 (1971), *Romain v. Middletown Area School District,* 1 Pa. Commonwealth Ct. 419, 421, 275 A. 2d 400 (1971).

At the time of the incident out of which this lawsuit arose, Shannon had served the Borough of Whitehall

---

* The only additional testimony related to whether the stenographic notes of a qualified court stenographer hired by Shannon to make a transcript of the proceedings before the Borough Council could be used in evidence.

(Borough) as a police officer for eight years, with no previous suspension record.

The opening scene of the incident occurred at about 1:30 P.M., on Wednesday, May 15, 1970, when appellant's infant son (age one and one-half years) tripped, fell, and was injured on the sidewalk adjacent to appellant's home. The child suffered deep lacerations of the lip and gums, owing to the fact that in his fall he came in contact with the sharp edges of a metal can. The record describes the frantic scene of a policeman father and a mother, trained as a nurse, desperately, but unsuccessfully, attempting to stop the bleeding from the baby's wounds. One need not be a parent who has been through the traumatic experience of watching his own child thrashing and screaming with fear and pain, to appreciate Shannon's description of his nurse-wife's condition. He said, "She was by this time on the point of hysteria." Shannon was due to report for his police work at 2:45 P.M. In the midst of this excitement, owing perhaps to his police training, Shannon had the presence of mind to call the police desk and ask to talk to the Chief of Police. There are no significant differences between the descriptions of what transpired thereafter as indicated in the testimony of both the Chief and Shannon.

By telephone Shannon told the Chief that his son had fallen and was badly hurt and requested permission to report late for duty so that he could take his baby and wife to the hospital. The Chief inquired of Shannon whether or not he had "a grandfather, grandmother and brothers and sisters and others" to help in the emergency, which would enable him to arrive at the station at the regular time for the commencement of his duty. At the very time of the phone conversation, the baby's wounds were still bleeding, and Shannon's wife was quite upset. Shannon, understandably abrupt, told the Chief to forget the call, and he there-

after sought the aid of the police of the municipality wherein he lived, and they took his wife and baby to a hospital. Shannon then deposited his two other children (then aged five and three) with neighbors, and thereafter Shannon reported for duty on time.

After reporting for work, Shannon read the police reports (as is the custom) and was standing about the hallway, when the Chief approached Shannon and inquired why he was not in the patrol car, making his rounds. The Chief's description of this scene, which is critical to this case, is sufficiently graphic, and we set it forth at this point: "Now, I looked at the clock and it was seven minutes to three, and he was out in the hallway, and I walked out and I said to him, 'Aren't you the early man?' and he says, 'Yes.' I says, 'You are supposed to be in the car and gone,' and he said to that, he turned around and replied, 'Well, what am I supposed to do?' and I replied, 'You know what you are supposed to do,' and I was sitting in a chair within the general office there. He turned around, went out, and suddenly he whirled around and came back, and he had his cap in his hand, and he hit it on his knee and it jumped from his hand, and he said, *'I will be a son of a bitch. If I am around here twenty years, you will regret and remember this day.'* " (Emphasis added) After the Chief reported this incident, that same day, to the Mayor of the Borough, Shannon was called in to meet with the Chief and the Mayor. Shannon admitted the incident, and the Mayor ordered a two-day suspension for "conduct unbecoming an officer." This suspension was ratified by Borough Council at its next meeting, without a hearing. Shannon appealed Council's action to the Civil Service Commission, where a hearing was held and a record made. We note that written charges were properly served on Shannon.

Although the Commission expressed its awareness of and sensitivity to the surrounding circumstances, the Commission concluded that Shannon's action, as described above, constituted "behavior unbecoming an officer." On appeal to the lower court this decision of the Civil Service Commission was affirmed.

Our scope of review and a description of conduct unbecoming an officer has been set forth in the case of *In re Zeber's Appeal*, 398 Pa. 35, 42, 156 A. 2d 821, 824-25 (1959), wherein the Court stated:

"A broad discretion is vested in the administrative officials as to what constitutes just cause for dismissal under the Civil Service Act. A court cannot substitute its judgment for that of the Trial Board and Civil Service Commission in whom the discretionary power is vested. This Court, in a long line of cases, has refused to step in and set aside the dismissal of a municipal employee where *sufficient evidence* was present in the record to sustain the action of the administrative body. [Citing cases] If there is admissible evidence, the weight of which the court is without authority to consider, to move the deliberate powers of the Commission, without manifestly abusing its discretion, in sustaining or reversing the action of the Trial Board, then the courts may not reverse such action. [Citing a case]

"Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in the public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable

doubt. For this reason the disposition of the criminal charges favorably to appellant did not require the Trial Board to drop its charges. It is elementary that the measure of proof to convict for a criminal offense is substantially different and greater than that necessary to support the dismissal of a municipal employee. It is sufficient that the complained of conduct and its attending circumstances be such as to offend publicly accepted standards of decency." (Emphasis added)

In his testimony, the Chief indicated that he did not feel threatened by Shannon's words, and he added that they were delivered in a loud, rather than in a shouting tone of voice. The Chief further testified to the absence of any civilians who might have overheard the exchange. One police officer, the desk policeman, was in the vicinity, and overheard only parts of the exchange. This same officer indicated his awareness of Shannon's state of upset. On the record Shannon admitted making the provocative statement. His only excuse was his emotional state arising from concern for his infant child.

Taking into account all of the testimony and evidence presented in support of Shannon's suspension, it is the holding of this Court that the Commission committed a manifest abuse of discretion in sustaining the action of the Borough Council in its ratification of the Mayor's action.

This Court is aware of the urgent need that internal discipline and respect be practiced by the police forces of a governmental body. However, under the facts and circumstances as presented in the record of this case, the actions of Shannon did not amount to "conduct unbecoming a police officer." In view of the fact that a Chief of Police with seventeen years of experience (who in the course of his police work certainly heard language stronger and more abusive than used

498

here) stated for the record that he was not in any way intimidated by the words, necessitates a conclusion that the Chief's testimony is not sufficient evidence to support the action of the Borough Council. It is useful to read the actual words of Shannon, quoted above, wherein one sees that Shannon did not speak derogatively of the Chief, but, rather, of himself. The law has always been aware of and receptive to mitigating circumstances in which a person finds himself. We have read and reread the short record in this case to make certain that we are not merely substituting our judgment for that of the Civil Service Commission. We conclude that our action is not one of substitution, but, rather, a determination that this record fails to support the charge. Therefore, the Commission has committed an error of law. Our holding thus makes unnecessary our ruling on the other issues, all of which involve procedural matters. The Order of the court below is reversed.