## CHIEF, MONTGOMERY COUNTY DEPARTMENT OF POLICE *v.* THOMAS B. JACOCKS, JR.

[No. 209, September Term, 1981.]

*Decided November 5, 1981.*

The cause was argued before LOWE, WILNER and MACDANIEL, JJ.

*Bruce P. Sherman, Assistant County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney for Montgomery County,* and *Richard E. Frederick, Deputy County Attorney for Montgomery County,* on the brief, for appellant.

*Daniel J. Cassidy* for appellee.

WILNER, J., delivered the opinion of the Court.

Appellee is a police officer employed by the Montgomery County Police Department. He is therefore subject to the provisions, procedures, and protections of the Law-Enforcement Officers' Bill of Rights (LEOBR), codified in Md. Ann. Code art. 27, § 727, *et seq.*

On June 13, 1980, appellee received a memorandum from appellant, the Chief of the Montgomery County police department, informing him that an investigation had been conducted into an incident occurring on April 15, 1980, and that, as a result of that investigation, a charge against him of "conduct unbecoming a police officer" had been "sustained." That charge, according to the memorandum, was based on the allegation that "on 4/15/80, at approximately 0900 hours, you met with Major S. Filyo and Sgt. Bohn. You spoke to Major Filyo in a disrespectful manner constituting conduct unbecoming; that among the statements you made were the following: . . . ." There then appeared seven statements of a defiant or inelegant nature allegedly made by appellee.

The memorandum informed appellee that the administrative punishment proposed for the infraction noted was suspension without pay for two days and transfer to another unit within the department. Rather than accept that punishment, however, appellee exercised his right under the law to an administrative hearing; and one was scheduled for July 30, 1980. On June 24, 1980, appellant gave appellee, in writing, the names of the witnesses who would be called to testify at the hearing, as well as the members who would comprise the hearing board.

At or about this point, appellee learned that, during the course of the investigation of the matter, each of the prospective witnesses had been interviewed by the department's internal affairs office, and that the interviews had been tape-recorded. Through counsel, appellee requested access to copies of the statements given by those witnesses who "will be called by the county in an effort to prove their case in chief"; and, when that request was denied, and the county made clear that appellee would not be allowed to see the statements even after the witnesses had testified at the administrative hearing, he filed this action in the Circuit Court for Montgomery County. *See* § 734 of art. 27. In his bill of complaint, he sought, among other relief, an order directing appellant to "produce for inspection and use as evidence the statements of all witnesses interviewed by the Office of Internal Affairs, in preparation for the June 13, 1980 charging memorandum and July 30, 1980 Administrative Hearing of this matter."

After a non-evidentiary hearing, the court granted a narrower form of the requested relief. Relying on the principles announced in *Jencks v. United States,* 353 U.S. 657 (1957), as restated in *Carr v. State,* 284 Md. 455 (1979), it concluded that appellee's right to cross-examine the witnesses against him would be rendered ineffective unless he had access to their earlier statements. Although not requiring disclosure of the statements in the context of pre-hearing discovery, the court did order appellant to produce "for inspection and *use as evidence* at the hearing the statements to the Department of Internal Affairs of *all witnesses who have testified at the administrative hearing* on the charges brought against [appellee]." (Emphasis supplied.)

Aggrieved by that order, appellant has taken this appeal, complaining that (1) appellee has no right under LEOBR to inspect statements obtained by the internal affairs division, (2) the *Jencks-Carr* rules do not apply to administrative proceedings, and (3) in any event, the order was too broad. We agree with appellant that, under the circumstances in

this case, the order was too broad; we do not agree, however, with his first two assertions.

LEOBR, first enacted in 1974, has been before the appellate courts of this State on a number of occasions and in a variety of contexts.[1] Its purpose, as we said in *Abbott v. Administrative Hearing Board*, 33 Md.App. 681, 682 (1976), *cert. den.* 280 Md. 727 (1977), was "to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal."

The law deals with situations in which some charge or complaint is made against a police officer, or he otherwise comes under suspicion of misbehavior, and it looks to what is essentially a two-phase administrative process. The first phase involves an internal investigation to determine whether there is some substance to the complaint or suspicion. If it appears that there is, a recommendation for some disciplinary action is made. At that point, phase two begins — an adjudicatory hearing before a departmental hearing board to determine (1) whether the charge itself is valid, and (2) if so, what the punishment should be. If the board finds the officer innocent of the charge, that ends the proceeding. If it finds him guilty, it then makes a recommendation to the chief of police as to an appropriate punishment. The chief is bound by a determination of innocence, but not a proposed punishment in the event of a finding of guilt. As to that, his decision (rather than that of the Board) is final.

LEOBR contains provisions dealing with both phases. The first phase — the internal investigation — is governed by § 728(b) of art. 27. That section focuses primarily on the interrogation of the subject officer rather than on the general gathering of evidence. It sets limits on where, when, and

---

1. *See, for example, Abbott v. Administrative Hearing Board*, 33 Md.App. 681 (1976), *cert. den.* 280 Md. 727 (1977); *Widomski v. Chief of Police*, 41 Md.App. 361, *cert. den.* 284 Md. 750 (1979); *Police Commissioner v. Dowling*, 281 Md. 412 (1977); *Moore v. Town of Fairmount Heights*, 285 Md. 578 (1979); *DiGrazia v. County Executive*, 43 Md.App. 580 (1979), *rev'd* 288 Md. 437 (1980); *Commissioner, Baltimore City Police Dept. v. Cason*, 34 Md.App. 487, *cert. den.* 280 Md. 728 (1977).

how such an interrogation may occur. It requires that a complete record be kept of the officer's interrogation and that a copy of that record be made available to the officer prior to the administrative hearing. It imposes no similar requirement, however, with respect to the interrogation of other witnesses — persons other than the officer under investigation. With regard to the gathering of evidence from any other source, the statute provides only that (1) upon completion of the investigation, the officer shall be notified "of the name of any witness not less than ten days prior to any hearing" (§ 728(b)(5)), and (2) the agency "may not insert any adverse material into any file of the officer, *except the file of the internal investigation or the intelligence division,* unless the officer has an opportunity to review, sign, receive a copy of, and comment in writing upon the adverse material, unless the officer waives these rights." (Emphasis supplied; § 728(b)(12)).

The procedures relating to the adjudicatory hearing are contained in § 730. Among other things, that section provides that:

(1) The officer "shall be given ample opportunity to present evidence and argument with respect to the issues involved," and that he has the right to counsel (subsection (b));

(2) "Evidence which possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs shall be admissible and shall be given probative effect. The hearing board conducting the hearing shall give effect to the rules of privilege recognized by law, and shall exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. All records and documents which any party desires to use shall be offered and made a part of the record. Documentary evidence may be received in the form of copies or excerpts, or by incorporation by reference." (subsection (c)); and

(3) "Every party has the right of cross-examination of the witnesses who testify, and may submit rebuttal evidence." (subsection (d)).

No claim was made below, and no claim is made here, that the statements given to the internal affairs office were discoverable or usable as substantive evidence under § 730(b) or (c), and we therefore have no occasion to address that issue in this appeal. Maryland Rules 1085, 1031; *Jacober v. High Hill Realty, Inc.,* 22 Md.App. 115, *cert. den.* 272 Md. 743 (1974). The issue presented here, in the context both of statutory construction of LEOBR and the application of *Jencks-Carr* is whether discovery of the statements in question is mandated as an extension of appellee's right under § 730 (d) to cross-examine the witnesses against him or, conversely, whether the internal investigation file is specifically privileged and thus non-disclosable under § 728(b)(12).

The statutory construction question is not especially difficult. There is nothing in LEOBR either expressly requiring or expressly denying access to statements given to the internal affairs office by persons who ultimately testify as witnesses. Although a record of the *subject's* interrogation and the *names* of witnesses to be called at the administrative hearing are required to be disclosed, nowhere does the statute expressly require disclosure of pre-hearing statements made by anyone but the officer under investigation. On the other hand, although by implication § 728(b)(12) permits an internal investigation file to be placed in the "file of the officer" without the opportunity of the officer to review it, that section does not preclude the disclosure of pre-hearing statements taken by the internal affairs office in connection with its investigation *after* the witnesses have testified at the administrative hearing. The case therefore turns, entirely, on whether the *Jencks-Carr* principles are applicable as part of the statutory right of cross-examination at the administrative hearing.

The so-called "*Jencks* rule" emanates from *Jencks v. United States, supra,* 353 U.S. 657. The petitioner there had been convicted of falsely swearing in an affidavit filed with the National Labor Relations Board that he was not a member of the Communist Party. His conviction rested in large

measure upon the testimony of two paid F.B.I. informants who described in some detail Jencks' participation in Communist Party activities from 1946 to 1952. These witnesses had made regular written reports to the F.B.I. during that period describing, contemporaneously, the events about which they later testified; and Jencks moved, at trial, for copies of those reports. His request was denied.

Reversing the conviction, the Supreme Court rejected the notion that Jencks was required "to lay a preliminary foundation of inconsistency" in order to obtain the reports. It noted the "crucial nature" of the testimony offered by the two witnesses and the singular importance to Jencks that that testimony be impeached. It then observed, at p. 667:

> "Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony."

Building from this, the Court went on to state that, unless a testifying witness actually admits making a prior inconsistent statement, "the accused is helpless to know or discover conflict without inspecting the reports." *Id.* at 668. Thus, it held that Jencks was entitled to inspect the contemporaneous reports made to the F.B.I. by the two testifying witnesses "touching the events and activities as to which they testified at the trial." *Id.* "We hold, further," it said,

> "that the petitioner is entitled to inspect the reports to decide whether to use them in his defense. Because only the defense is adequately equipped to

determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less." *Id.* at 668-69.

The *Jencks* rule, as laid out in the *Jencks* Opinion, was limited to criminal cases,[2] and, although not entirely apparent from *Jencks* itself, the Supreme Court subsequently made clear that the holding was not grounded so much on express Constitutional rights as on the Court's power, "in the absence of statutory provision, to prescribe procedures for the administration of justice in the federal courts. . . ." *See Palermo v. United States,* 360 U.S. 343, 345 (1959). Congress very quickly supplied the absent statutory provision. Three months after the filing of the *Jencks* Opinion, it enacted P.L. 85-269 (71 Stat. 595 (1957), codified at 18 U.S.C. § 3500), which has since become known as the "Jencks Act," for the purpose of defining the kinds of pretrial statements obtainable by defendants and providing a procedure for determining whether particular statements sought by the defense fall within that definition. *See Palermo, supra,* for a discussion of the history of the "Jencks Act."

Maryland has no counterpart to the "Jencks Act"; our legislature has not acted in this area. By judicial decision, however, we have adopted the underlying principles set forth in the *Jencks* Opinion, at least with respect to criminal cases, as a necessary outgrowth of the right of cross-examination. *See Carr v. State, supra,* 284 Md. 455 and *Leonard v. State,* 46 Md.App. 631 (1980), *aff'd* 290 Md. 295 (1981); *but compare Yuen v. State,* 43 Md.App. 109, *cert. den.* 286 Md. 756 (1979), *cert. den.* 444 U.S. 1076 (1980).

Although both the *Jencks* "rule" and the "Jencks Act" were intended to apply (and by their terms do apply) specifically to criminal cases, they have, at least in the

---

**2.** *See* 353 U.S. at 671-72.

.

Federal system, been almost uniformly extended to administrative proceedings as well.

The first extension came in *Communist Party of the United States v. Subversive Activities Control Board,* 254 F.2d 314 (D.C. Cir. 1958). The context was an administrative proceeding before the Subversive Activities Control Board to determine whether the Communist Party of the United States was required to register with the Attorney General as a "Communist action organization," pursuant to the Internal Security Act of 1950. As in the *Jencks* case, several key government witnesses were former members of the Communist Party who had become F.B.I. informants and who had supplied the F.B.I. with regular and contemporaneous written reports pertaining to the matters about which they had testified. The party, in vain, had sought to obtain copies of those reports for use in cross-examination.

The Circuit Court of Appeals, noting that the *Jencks* decision was grounded "upon the elementary proposition that the interest of the United States is that justice be done," concluded that "[t]he same elementary proposition applies here and leads to the same result." 254 F.2d at 328. "The question here," it said, "is whether production is one of the fundamentals of fair play required in an administrative proceeding. We think it is." *Id.* at 327. Thus, it held, with respect to the administrative proceeding:

> ". . . [W]here the Government places on the stand a witness who testifies about an event long past, and it is shown that this witness at or about the time of the event made a written report to the Government concerning that event, and the testimony is material, and the credibility of the witness in her testimony upon this precise point is attacked, the Government upon demand must produce the report made by the witness." *Id.* at 328.

Both *Jencks* and the *Communist Party* case involved the situation of witnesses testifying about events occurring

years earlier,[3] and the language in the opinions pertaining to that time lag has to be viewed with that in mind. Most subsequent cases have not expressed or implied any limitation in that regard, but have merely applied the basic doctrine to administrative proceedings. *See, for example, N.L.R.B. v. Adhesive Products Corp.,* 258 F.2d 403, 407-08 (2d Cir. 1958), and *Harvey Aluminum (Incorporated) v. N.L.R.B.,* 335 F.2d 749, 753 (9th Cir. 1964), applying the rule to proceedings before the National Labor Relations Board; *Carlisle v. Rogers,* 262 F.2d 19 (D.C. Cir. 1958), and *Petrowicz v. Holland,* 142 F.Supp. 369 (E.D.Pa. 1956 — pre-*Jencks*), involving deportation proceedings before the Immigration and Naturalization Service; *Fairbank v. Hardin,* 429 F.2d 264 (9th Cir.), *cert. den.* 400 U.S. 943 (1970), proceedings before the Department of Agriculture under the Packers and Stockyards Act; *Schere v. Christenberry,* 179 F.Supp. 900 (S.D.N.Y. 1959), hearing before Post Office Hearing Examiner; *Augenblick v. United States,* 377 F.2d 586 (Ct. Claims 1967), *rev'd on other grounds* 393 U.S. 348 (1969), court martial proceedings; *Davis & Randall, Inc. v. United States,* 219 F.Supp. 673 (W.D.N.Y. 1963), Interstate Commerce Commission proceeding. *See also Silverman v. Commodity Futures Trading Commission,* 549 F.2d 28 (7th Cir. 1977); *Great Lakes Airlines, Inc. v. C.A.B.,* 291 F.2d 354 (9th Cir.), *cert. den.* 368 U.S. 890, *reh. den.* 368 U.S. 936 (1961; *Moore v. Administrator, Veterans Administration,* 475 F.2d 1283 (D.C. Cir. 1973); *R. A. Holman & Co. v. Securities and Exchange Commission,* 366 F.2d 446 (2d Cir. 1966), *amended on other grounds,* 377 F.2d 665, *cert. den.* 389 U.S. 991 (1967), *reh. den.* 389 U.S. 1060 (1968); *L. G. Balfour Co. v. F.T.C.,* 442 F.2d 1 (7th Cir. 1971); Note, *The Jencks Rule and Administrative Law,* 68 Yale L.J. 1409 (1959); 4 Mezines, Stein & Gruff, *Administrative Law,* § 23.03 [7] (1977); Note, 11 Stan. L. Rev. 297 (1959).

---

**3.** Jencks' conviction occurred in January, 1954 (*see Jencks v. United States,* 226 F.2d 553, 554 (5th Cir. 1955), *rev'd* 353 U.S. 657 (1957)), and, as noted, the relevant events took place between 1946 and 1952. Similarly, the administrative proceeding at issue in the *Communist Party* case occurred in 1951-52, whereas the relevant events being testified to took place in 1949.

The rationale stated for the extension of the doctrine to administrative proceedings is simple and direct. In *Harvey Aluminum (Incorporated) v. N.L.R.B., supra,* 335 F.2d 749, 753, the Ninth Circuit Court of Appeals put it this way:

> "Prior statements of a witness relating to his testimony must be produced by the government because 'justice requires no less.' [Citation omitted.] The rule applies to proceedings of the [N.L.R.B.] because 'the laws under which these agencies operate prescribe the fundamentals of fair play.' Their proceedings must 'satisfy the pertinent demands of due process.' "

The Second Circuit, in *Adhesive Products Corp., supra,* 258 F.2d 403, 408, observed:

> "In our opinion, logic compels the conclusion that these rules are applicable to an administrative hearing. [Citations omitted.] The production and inspection, and possible use for cross-examination purposes, of such a document could serve only to test the memory and credibility of the witness, while, in the absence of a claim of confidence or privilege, there can be no sound reason to bar such production."

Extension of the *Jencks* principle to administrative proceedings is not limited to the Federal domain, although it is more prevalent there. Indeed, the case most analogous to that now before us was decided by a State court — *Greco v. State Police Merit Board,* 245 N.E.2d 99 (Ill.App. 1969). There, as here, a police officer was accused of wrongdoing and faced an administrative hearing to determine his fate. There, as here, he sought access to pre-trial written statements made by witnesses slated to testify against him, and, when refused such access, brought a proceeding in court to compel it. Referring to *Jencks, Communist Party,* and *Adhesive Products Corp.,* all *supra,* the Illinois appellate court held, at p. 102:

"We can see every reason for requiring production of such items in state administrative proceedings as well, and can find no valid argument against such requirement. . . . Since the Board uses an adversary procedure to perform its investigation, a fair and unbiased result can obtain only if both adversaries are allowed to present a full case and are allowed to rebut the opposition. Depriving the defense of pre-trial statements of opposition witnesses who testify greatly impairs such full presentation and rebuttal and obliterates the opportunity for meaningful cross-examination. Without access to such statements, the defense is unable to test the memory, consistency, or veracity of the witnesses. In short, the best tool of cross-examination is denied the defense when pre-trial written statements are withheld."

See also State ex rel. DeLuca v. Common Council, 242 N.W.2d 689 (Wis. 1976); Saunders v. District of Columbia, 263 A.2d 58 (D.C. 1970). Cf. Garabendian v. New York State Liquor Authority, 307 N.Y.S.2d 270 (App.Div.), motion for leave to appeal den. 311 N.Y.S.2d 1025 (Ct.App. 1970).

We find the weight of authority noted above — and, more important, the reasoning behind it — most persuasive. Administrative agencies, including LEOBR hearing boards, must observe the basic rules of fairness, and that is what the Jencks rule is all about.

We are not dealing here with a general fishing expedition through confidential files or the disclosure of confidential information. The pre-trial statements need not be disclosed until the witness has completed his testimony on direct examination, and, even then, only those portions pertaining to matters about which he testified are subject to disclosure. With those limitations, we fail to see any justification for maintaining the cloak of secrecy. Presumably, the witness has told the internal affairs office the same story he tells from the witness stand. If not, the discrepancy ought to be revealed, not only in fairness to the accused officer but also,

and perhaps of equal importance, to protect the integrity of the internal affairs office and its methodology. Accordingly, we agree that the *relevant portions* of pre-hearing statements of witnesses called by appellant who actually testify against appellee must be produced at the hearing.

Unfortunately, the order of the circuit court went beyond that in a number of respects, which is why we think it was too broad. It directed appellant to produce for inspection and use as evidence the entire statements of all witnesses who testify at the hearing. In the first place, as *Leonard* makes clear, the pre-trial statements are not necessarily usable or admissible as evidence under the *Jencks* rule, but are disclosable to counsel only for possible use in cross-examination. Second, it is only those portions of the pre-trial statements that touch upon or concern the matters actually testified to that need be disclosed, which may be less than the entire text of the statements. Finally, only the statements made by "prosecution" witnesses — those called by the county or its agency to testify against appellee — need be disclosed.

To the extent that the order exceeded these limitations, it must be modified; and for that purpose we shall remand the case pursuant to Maryland Rule 1071.

> *Order affirmed in part and reversed in part.*
> *Case remanded to Circuit Court for Montgomery County for modification of order in accordance with this opinion; appellant to pay the costs.*