472 A.2d 485

**Thomas B. JACOCKS, Jr.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 741, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 9, 1984.

98

J. James McKenna, Rockville, for appellant.

Bruce P. Sherman, Sr. Asst. County Atty., for Montgomery County, with whom were Paul A. McGuckian, County Atty. for Montgomery County, and Robert G. Tobin, Deputy County Atty. for Montgomery County, on the brief, for appellee.

Argued before LISS, BISHOP and BLOOM, JJ.

BLOOM, Judge.

This Law Enforcement Officers' Bill of Rights (LEOBR)[1] case began with an accusation of conduct unbecoming a police officer and resulted in an official reprimand that was appealed to the Circuit Court for Montgomery County and from thence to this court.

In 1980, appellant, Sergeant[2] Thomas B. Jacocks, Jr., was in charge of the Warrant and Fugitive Section of the Montgomery County Police Department. That section is

---

1. Md.Ann.Code art. 27, §§ 727–734D.

2. Appellant has since been promoted to lieutenant.

part of the department's Investigative Services Bureau, which was then headed by Major Steven Filyo.

As a result of a February 1980 audit of the Warrant and Fugitive Section conducted by personnel of another section, Major Filyo decided to implement certain changes recommended in the audit report. Appellant, insisting that those changes were unwarranted, unnecessary and unwise, requested a meeting with Major Filyo to discuss the matter. Filyo balked at first but reluctantly agreed to a meeting. Consequently, on April 14, 1980, there was a meeting attended by appellant, Major Filyo, and several other officers. At that meeting appellant voiced his objections to certain recommendations contained in the audit report.

The following day Major Filyo met in his office with appellant and Sergeant James L. Bohn of the Youth Division. Major Filyo had called that meeting to discuss the handling of juvenile warrants. During the course of the discussion, appellant became extremely angry because of the changes Major Filyo proposed to make in departmental procedures. According to Sergeant Bohn, appellant told Major Filyo that "he could take his job and stick it up his ass." Sergeant Bohn also testified that appellant told the major that he was "fed up with the bullshit that has been going on" and that the major could stick his recommendations "up his ass." In Sergeant Bohn's opinion, appellant was "out of control." Appellant questioned Major Filyo's competence and told the major that he would not make any of the changes unless he was ordered to do so by the chief of police. Sergeant Bohn, embarrassed by appellant's tirade, excused himself and left the office.

Police personnel who were in the vicinity of Major Filyo's office at the time of the meeting later testified that they had heard appellant's outburst. Susan Anastasi, Major Filyo's administrative aide, testified that she heard appellant state that he "was tired of this bullshit." In addition, Sergeant Richard K. Stone testified that he heard appellant shouting in the major's office and that appellant's voice

"was angry, it was very loud. Not loud enough to understand the words, however, but it was—we could hear the shouting, and it lasted for approximately five minutes."

As a result of that meeting, Major Filyo directed a memorandum to the Chief of the Montgomery County Department of Police requesting that appellant be transferred. Major Filyo later requested that a formal investigation be conducted by the Office of Internal Affairs (OIA). Subsequently, on June 13 appellant was charged via a written memorandum with conduct unbecoming a police officer. Rather than accept the punitive action offered by the chief, a two day suspension without pay and a transfer to the Field Services Bureau, appellant chose to exercise his right to an administrative evidentiary hearing pursuant to the Law Enforcement Officers' Bill of Rights. The hearing board found that appellant's behavior toward Major Filyo during the April 15 hearing constituted conduct unbecoming a police officer. In light of appellant's long term and excellent record of service, the board recommended only that appellant receive an official letter of reprimand. The chief followed that recommendation and issued a formal letter of reprimand, whereupon appellant appealed to the Circuit Court which affirmed appellee's action.

On appeal to this court, appellant raises the following issues:

1. Whether disclosure is required of all relevant portions of oral, unrecorded pre-trial statements of witnesses called by the county before Law Enforcement Officer Bill of Rights Hearing Boards.

2. Whether the admission into evidence of a tape-recorded interview and a transcript of said tape, acknowledged to be hearsay, was harmless error due to the introduction by appellant of a memorandum addressing some of the matters contained on the tape.

3. Whether the wholesale admission into evidence of witness statements provided under *Chief, Montgomery County Department of Police v. Jacocks* is reversible error.

4. Whether the hearing board erred in allowing a witness to remain in the hearing room after a request for sequestration of all witnesses.

5. Whether appellant's actions, as found by the hearing board, constitute conduct unbecoming an officer as set forth in the Montgomery County Police Department's General Order DR 80–9, Rule 14.

## I

During the OIA's investigation, several persons were interviewed, some of whom later testified at the hearing. In each instance, the investigator had an unrecorded discussion with the witness before conducting a recorded interview. Appellant requested access to copies of statements given by those witnesses who "will be called by the county in an effort to prove their case in chief." In denying appellant's request, the county made clear that appellant would not be allowed to see the statements even after the witnesses had testified at the hearing. Appellant then brought an action in the Circuit Court for Montgomery County seeking, among other relief, an order directing the county to disclose those pre-hearing statements. The circuit court ordered the county "to produce 'for inspection and *use as evidence* at the hearing the statements to the Department of Internal Affairs of *all witnesses who have testified at the administrative hearing* on the charges brought against [appellant].' (Emphasis supplied.)" That order was appealed to this court. *Chief, Montgomery County Dept. of Police v. Jacocks,* 50 Md.App. 132, 134, 436 A.2d 930 (1981).

We agreed with the circuit court that the principles announced in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), as adopted by *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979), dictate "that [appellant's] right to cross-examine the witnesses against him would be rendered ineffective unless he had access to their earlier statements." *Jacocks,* 50 Md.App. at 134, 436 A.2d 930. We disagreed, however, with the breadth of the circuit court's

order. We held that "[t]he pre-trial statements need not be disclosed until the witness has completed his testimony on direct examination, and, even then, only those portions pertaining to matters about which he testified are subject to disclosure." *Id.* at 143, 436 A.2d 930.

Consequently, the department provided transcripts of the recorded portions of the interviews to appellant's counsel after each witness testified on direct examination. Appellant contends, however, that the department's action was not enough. He argues "that under Maryland Law he was entitled to a summary of the oral statements made by the Court's witnesses prior to the interviews recorded and transcribed by the OIA or, in the alternative, to the notes made by the investigators of such conversations." Appellant's position is based upon a misunderstanding of our use of the word "statements" and of the *Jencks* rule.

Jencks had been convicted of falsely swearing, in an affidavit filed with the National Labor Relations Board, that he was not a member of the Communist Party. His conviction rested in part upon the testimony of two paid F.B.I. informants. These informants had made regular written reports to the F.B.I. describing the events about which they later testified. At trial, Jencks's motion requesting copies of those reports was denied. The Supreme Court reversed the conviction noting "the 'crucial nature' of the testimony offered by the two witnesses and the singular importance to Jencks that that testimony be impeached." *Id.* at 138, 436 A.2d 930. The Court observed that "[e]very experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory." *Jencks,* 353 U.S. at 667, 77 S.Ct. at 1013. The Court further noted that unless the witness "admits conflict . . . the accused is helpless to know or discover conflict without inspecting the reports." *Id.* at 668, 77 S.Ct. at 1013 (footnote omitted).

Shortly after the Court's decision in *Jencks,* Congress codified the Court's holding in what has come to be known

as the "Jencks Act." That statute defines "statement," in relation to a witness called by the United States, as:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

Cases interpreting the Jencks Act have held that a defendant's right to obtain witnesses' prior statements does not include the right to obtain investigator's notes concerning discussions with witnesses. In *Strickland v. United States,* 389 A.2d 1325 (D.C.1978), the defendant sought reversal of his convictions on four counts of first degree murder and one count of possession of a dangerous weapon. In the course of the homicide investigation, a key prosecution witness made certain comments to a detective. The detective made notes of these comments—notes which the Court described as "miscellaneous" and which were gathered "from three separate interviews with [the witness] over a two-day period." *Id.* at 1329. The Court held that these notes were not statements within the Jencks Act and that, consequently, the prosecution was not obligated to provide them to the defendant. The Court pointed out that such notes "have been thought to fall outside the Jencks Act because they are 'rough,' 'general,' 'sketchy,' and/or 'hasty,' and thus not verbatim statements of the witness...." *Id.* at 1329 (citation omitted) [quoting *Hardy v. United States,* 316 A.2d 867, 870 n. 3 (D.C.1974)].

Although Maryland has not enacted legislation similar to the Jencks Act, the Court of Appeals adopted the *Jencks* rule in *Carr v. State,* supra. We had an opportunity to

apply *Carr* in *Whitehead v. State,* 54 Md.App. 428, 458 A.2d 905 (1983). At Whitehead's trial, defense counsel sought to impeach the testimony of a prosecution witness. To facilitate the impeachment, Whitehead's attorney "asked to be allowed to inspect notes made by three different police officers and by an assistant State's Attorney during pretrial interviews of [the witness]." *Id.* at 439, 458 A.2d 905. We affirmed the trial court's refusal to require production of the notes, holding that, while prior signed statements of witnesses whose testimony incriminated the accused are recoverable under *Jencks* and *Carr,* investigator's notes of a conversation with a witness are not producible for impeachment purposes.

■ Appellant claims "that *Whitehead,* while at first blush appearing to be diametrically opposed to Appellant's position, can be distinguished, and actually supports the reversal of the hearing board's determination." *Whitehead* not only appears to be, it is diametrically opposed to appellant's position. Appellant relies on the fact that Whitehead had been provided a summary of the witness's oral statements to support his contention that production of such summaries is a matter of right under *Carr.* That is simply not the law. The fact that Whitehead had been given summaries of witnesses' oral statements was not the basis for our holding that he was not entitled to an inspection of the investigators' notes. That Whitehead received more information than that to which he was entitled does not mean that all similarly situated persons are entitled to such prosecutorial largess.

Apparently, the OIA investigators conferred at length with each of the witnesses before conducting the recorded interviews. Appellant contends that since these "pre-interview interviews" were used to prepare both the investigators and the witnesses for the recorded interviews, in which some matters previously discussed were omitted, he was entitled either to summaries of the unrecorded interviews or the investigators' notes concerning them. We reject that

contention. Statements to which appellant was entitled under *Jencks, Carr,* and *Whitehead* were statements useful for impeachment of the witnesses who made them. Someone else's notes, memoranda, recollections or interpretations of the witnesses' remarks are not *Jencks* material.

## II

Major Filyo died prior to the administrative hearing. A tape recording of OIA's interview of Major Filyo was admitted into evidence at the hearing. Appellant argues that the tape recording should not have been admitted because it was hearsay and, therefore, incompetent evidence required to be excluded under art. 27, § 730(c). That statute provides:

"*Evidence.*—Evidence which possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs shall be admissible and shall be given probative effect. The hearing board conducting the hearing shall give effect to the rules of privilege recognized by law, and shall exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. All records and documents any party desires to use shall be offered and made a part of the record. Documentary evidence may be received in the form of copies of excerpts, or by incorporation by reference."

We need not decide whether, under this statute, hearsay evidence is necessarily incompetent evidence[3] because we agree with the trial court's conclusion that any error in admitting the tape into evidence was clearly harmless. Before the tape of OIA's interview of Major Filyo was offered

---

**3.** *See, e.g., Widomski v. Chief of Police,* 41 Md.App. 361, 378, 397 A.2d 222 (1979), a LEOBR case, in which we held that "it is ... clearly established in Maryland that administrative bodies are not ordinarily bound by the strict rules of evidence of a law court." We noted that had the legislature intended the hearings to be conducted in strict adherence to rules of criminal procedure, it "would not have left the conduct of a hearing in the hands of laymen, even though they may be trained law-enforcement officers." *Id.* at 380, 397 A.2d 222.

into evidence, appellant had introduced into evidence a memorandum from Major Filyo to the chief of police describing the events of the April 15 meeting. The matters contained in the tape recording were found by the court to be merely cumulative of those set forth in the memorandum introduced by the appellant himself and were conceded by appellant's counsel to be practically identical to the allegations in the administrative charging document. Any error in admitting a statement into evidence is harmless—non-prejudicial—if the same matter was previously admitted without objection. *Carter v. Correa,* 28 Md.App. 397, 346 A.2d 481 (1975).

Appellant asserts that he introduced the memorandum dictated by Major Filyo immediately after the eventful meeting for the sole purpose of impeaching the secretary who typed it. By showing that her testimony was almost identical in language to the memorandum, counsel hoped to persuade the Board that the secretary did not actually hear appellant make the remarks attributed to him but heard of them only through Major Filyo. The difficulty with appellant's argument on this point is that the record does not indicate that the memorandum was offered in evidence only for that limited purpose. The document having been offered and received into evidence without limitation, its contents could be considered by the hearing board as substantive evidence.

There were certain portions of the recorded interview of Major Filyo that were not merely cumulative of the previously introduced memorandum. Major Filyo mentioned information he had received from other officers to the effect that appellant did not cooperate in the audit and had instructed his subordinates not to cooperate with the auditors. That information was clearly objectionable. It was hearsay, and it had no relationship to the single matter under investigation—appellant's conduct on April 15. The court found, however, that appellant suffered no prejudice as a result of it. Our review of the record convinces us that

this finding was not erroneous. The decision of an administrative agency will be disturbed only if it was *"[a]ffected* by ... error or law...." Md.Ann.Code art. 41, § 255(f)(4) (emphasis added). It follows that if an erroneous admission of evidence did not affect a decision, that decision will not be disturbed. *See Bosley v. Quigley,* 189 Md. 493, 508, 56 A.2d 835 (1948), and *Citizens Ass'n v. District of Columbia Alcoholic Beverage Control Bd.,* 287 A.2d 87, 89 (1972).

■ To establish that there has been a reversible error, "the burden is on the appellant in all cases to show prejudice as well as error...." *Blondes v. Hayes,* 29 Md.App. 663, 671, 350 A.2d 163 (1976) (citation omitted). If errors

are of such a character, and so interwoven with the case, as to lead a fair and impartial mind, trained and experienced in judicial investigation, upon an examination of the whole case and all the rulings involved therein, to the conclusion *that there is a reasonable probability that such errors may have affected the determination of the case,* they are prejudicial and reversible. (Emphasis added).

*Id.* quoting *Dobbs v. State,* 148 Md. 34, 48–49, 129 A. 275 (1925) (Offutt, J., concurring). "[W]hat constitutes prejudice warranting reversal in the erroneous admission or rejection of evidence is to be determined on the circumstances of each case." *Beahm v. Shortall,* 279 Md. 321, 332, 368 A.2d 1005 (1977).

In the case *sub judice,* the improperly admitted evidence clearly played no role in the board's decision and, therefore, was of no prejudice to appellant. In its memorandum announcing its decision, the board stated that its "decision in this matter was reached after considering the totality of all the evidence and testimony that was presented to the Hearing Board concerning Sgt. Thomas Jacocks' actions and demeanors both during and immediately after the April 15, 1980, meeting that had been held with Major Filyo." The evidence concerning that incident was clear, convincing and, despite appellant's denial, overwhelming.

### III

■ In addition to Major Filyo's recorded interview, the department also put into evidence transcripts of the recorded OIA interviews of each witness. While appellant objected to the introduction of these transcripts at the hearing, he did not present this issue to the circuit court on appeal. It was not, therefore, tried and decided by the court. Thus, it is not preserved for our review. Md.Rule 1085. *See Chertkof v. Dept. of Natural Resources,* 43 Md.App. 10, 402 A.2d 1315 (1979).

### IV

At the beginning of the administrative hearing, appellant requested that all witnesses be sequestered. Despite this request, one witness, Corporal William Seested was allowed to remain in the hearing room throughout the proceeding. Appellant contends that he was prejudiced by Corporal Seested's presence because "[a] witness would have to think twice before disagreeing with the methods utilized by the OIA and, especially, by the man sitting there taping their every word."

In arguing that Corporal Seested's presence should not have been permitted, appellant relies upon our decision in *Gunn v. State,* 4 Md.App. 379, 243 A.2d 15 (1968). In that case, the defendants had requested that the witnesses be excluded. Nonetheless, the victim of the crime (rape) was "brought into the courtroom while the medical doctor was testifying for the purpose of having the doctor identify her as the individual he had examined the night of the rape." *Id.* at 383, 243 A.2d 15. Under then Md.Rule 753, now Md.Rule 755, if exclusion of witnesses is requested, in a *criminal* trial, the trial court must comply with the request. In *Gunn,* we held that, although the trial court erred in allowing the victim to be brought into the courtroom, such error was harmless because the victim had already testified. Her testimony, therefore, could not have been affected by that of the doctor. *See also, Swift v. State,* 224 Md. 300, 167 A.2d 762 (1961).

■ Here, Corporal Seested was the first witness. His testimony, like that of the victim in *Gunn,* could not have been affected by his presence while others testified. Thus, even if we were to apply the rule applicable to criminal trials to the instant case, Corporal Seested's presence in the hearing room would have been harmless error.

■ Similarly, Rule 536, governing witness exclusion in civil cases, states that "[t]he court . . . *shall,* upon request of a party, order that the witnesses, other than a party[,] be excluded from the courtroom until called upon to testify." (Emphasis added.) The Court of Appeals has noted that "[t]he purpose of the exclusion rule is to prevent witnesses from being taught or prompted by another's testimony." *Gwaltney v. Morris,* 237 Md. 173, 176–177, 205 A.2d 266 (1964). The presence of a witness in the courtroom during another's testimony is not prejudicial error if the disobedient witness's own testimony is not influenced. *Id.*

Rule 536 also states that "[a] party which is a corporation or association, with the approval of the court, may designate a representative to remain in the courtroom even though such representative may be a witness." At the hearing, counsel for the county stated that she needed Corporal Seested present as her assistant. Hence, even if Rule 536 were to apply to the instant case, Corporal Seested's presence would have been justified as a representative of the county.

In any event, the above-cited rules apply to the procedures followed in the *courts* of the state. They do not apply to quasi-judicial proceedings conducted by state administrative agencies. Federal courts have held that sequestration is a matter resting in the sound discretion of administrative law judges. *NLRB v. Hale Mfg. Co.,* 570 F.2d 705 (8th Cir.1978); *L.S. Ayres & Co. v. NLRB,* 551 F.2d 586 (4th Cir.1977). Citing those cases, the District of Columbia Court of Appeals has held that an Unemployment Compensation Board hearing examiner was "not required to sequester witnesses, although he had the discretion to do so." *Jones v. District of*

*Columbia Unemployment Compensation Board,* 395 A.2d 392, 399 (D.C.1978).

■ We hold that the decision whether to sequester witnesses in an administrative adjudicatory hearing is a matter resting in the sound discretion of the presiding officer(s) and that that discretion was not abused in the present case. The witness who was not excluded was a representative of the county and, since he was the first witness to testify, his testimony was not influenced by that of the others.

V

Appellant contends that his behavior during the April 15 meeting did not constitute conduct unbecoming an officer. In *Commissioner, Baltimore City Police Dept. v. Cason,* 34 Md.App. 487, 508, 368 A.2d 1067 (1977), we discussed the scope of judicial review of LEOBR hearings.

A reviewing court may, and should, examine any inference, drawn by an agency, of the existence of a fact not shown by direct proof, to see if that inference reasonably follows from other facts which are shown by direct proof. If it does, even though the agency might reasonably have drawn a different inference, the court has no power to disagree with the fact so inferred.

A reviewing court may, and should, examine any conclusion reached by an agency, to see whether reasoning minds could reasonably reach that conclusion from facts in the record before the agency, by direct proof, or by permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion.

A reviewing court may, and should, examine facts found by an agency, to see if there was evidence to support each fact found. If there was evidence of that fact in the record before the agency, no matter how conflicting, or how questionable the credibility of the source of the evidence, the court has no power to substi-

tute its assessment of credibility for that made by the agency, and by doing so, reject the fact."

The board found "that Sgt. Jacocks did in fact act in a disrespectful and unprofessional manner towards Major Filyo, by what was described as an emotional outburst, characterized by the use of shouted vulgarities, and an agitated, argumentative, and in all probability a frustrated attitude." We need only say that there was ample evidence before the board to support that factual finding.

Appellant argues, however, that that factual finding does not support the board's conclusion that appellant's conduct was unbecoming a police officer. Appellant relies upon *Shannon v. Civil Service Comm'n of the Borough of White-hall,* 4 Pa.Cmwlth. 492, 287 A.2d 858 (1972). In that case, Officer Shannon was scheduled to report for work at 2:45 p.m. At 1:30 p.m., his one-and-a-half-year-old son tripped, fell, and was injured on the sidewalk adjacent to his house. The young boy severely cut his lip and gum when he fell on the sharp edges of a metal can. Officer Shannon and his wife, who was trained as a nurse, tried unsuccessfully to stop their son's bleeding. Officer Shannon somehow had the presence of mind to call the police desk and asked to speak with the chief of police. When Officer Shannon told the chief about the accident, the chief asked "Shannon whether or not he had 'a grandfather, grandmother and brothers and sisters and others' to help in the emergency, which would enable him to arrive at the station at the regular time for the commencement of his duty." *Id.* at 860.

Officer Shannon told the chief to forget the call, and he then obtained the help of the police of the municipality where he lived. The police took the injured child and the mother to the hospital while Officer Shannon left his two other children with a neighbor. Officer Shannon then reported to work on time. Upon seeing the chief in a hallway at the station, Officer Shannon told him, "I will be a son of a bitch. If I am around here twenty years, you will regret and remember this day." *Id.* The court, taking into ac-

count the absence of civilian witnesses, the chief's testimony that he was not intimidated by Shannon's language, Shannon's understandable emotional instability at that time, and Shannon's speaking derogatively of himself rather than the chief, held that Shannon's behavior, as a matter of law, did not constitute conduct unbecoming an officer.

In defining conduct unbecoming an officer, the *Shannon* court stated:

"Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in the public service."

*Id.* at 861 quoting *In re Zeber's Appeal,* 398 Pa. 35, 42, 156 A.2d 821, 824–825.

Here, it could certainly be found that appellant's conduct adversely affected the morale or efficiency of the Investigative Services Bureau. Appellant's tirade, unlike Officer Shannon's outburst, occurred in the presence of a third police officer, Sergeant Bohn. Furthermore, there was at least one civilian witness, Ms. Anastasi. Appellant's comments were clearly aimed at Major Filyo and not himself; appellant did not call himself a "son of a bitch" as did Shannon but stated that Major Filyo was incompetent and he used insulting and offensive language specifically directed at his superior officer. Most significantly, appellant was not under the intense, personal emotional distress that plagued Officer Shannon when he made his outburst. For all of these reasons, we will not substitute our judgment for that of the hearing board. When a police sergeant, in the presence of another police officer, screams at a police major, calls that major incompetent and uses the kind of language described in the evidence, the police hearing board is permitted to label that behavior as conduct unbecoming an officer. Such behavior is very likely to have an adverse effect on morale, efficiency and discipline.

JUDGMENT AFFIRMED.

APPELLANT TO PAY COSTS.