JOSEPH A. JACKSON *v.* BETHLEHEM-SPARROWS POINT SHIPYARD, INC.

[No. 69, October Term, 1947.]

584

*Decided January 16, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Paul Berman,* with whom were *Sigmund Levin, Theodore B. Berman* and *John Grason Turnbull* on the brief, for the appellant.

Jesse Slingluff, Jr., and Michael P. Crocker, with whom were Marbury, Miller & Evans and Kenneth C. Proctor on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

On May 15, 1944, appellant, employed by appellee, was loading a gun foundation on a freight car. The crane lifting the foundation swung it, and mashed appellant's head between the side of the car and the foundation. He sustained a fracture at the base of the skull, lacerations of the right ear and right side of the face and lacerations over left mastoid process. He was in a hospital eight days. One June 1, he filed his claim for compensation with the State Industrial Accident Commission. On June 6th an order was passed by the Commission finding appellant temporarily totally disabled and allowing him compensation from May 19, 1944, at the rate of twenty-three dollars a week during the continuance of his disability.

On April 26, 1945, the Commission, on its own motion set the case for a hearing to determine "the nature and extent of claimant's disability." A hearing was held on June 6, 1945 at which appellant was represented by the same counsel who appears for him in this Court. At this hearing appellant testified that when he returned to work on August 15, 1944, he worked five or six hours, after which he got nervous and could not do his work. He lost another week during the latter part of August, 1944 for which he was paid compensation. Thereafter he went back and at the time of the hearing was working on the "dinkey shifting car," making the same wages of $57.68 a week. This work was not as hard as that he had been doing at the time of his injury.

The appellant claimed at the hearing before the Commission that he had constant headaches, that he did not "hear good" out of his right ear, and that he "forgets". He stated that when he came back to work his eyes bothered him, and he was sent to Dr. Clapp, who prescribed glasses, which he did not wear before the accident. Reports of Dr. Clapp were filed. The one of August

14, 1944, reported a fairly high amount of mixed astigmatism. The one of August 25, 1945, made after a re-examination, showed his glasses were correct, but "he had some exophoria" and muscle exercises were recommended. Exophoria means that the visual lines tend outward.

Dr. Rubenstein reported on an examination made by him on May 10, 1945. At that time appellant complained to him of nervousness, headaches and spells of dizziness. The dizziness came on when he tried to use his eyes during stooping or bending. Prior to the accident he could see quite well. Since that time his vision is somewhat blurred. The glasses do not relieve his headaches or dizziness. The ophthalmoscopic examination was bilaterally normal. His pupils were round, equal, and reacted to light and accommodation. His visual fields were normal.

Dr. Spear reported on his examination made November 29, 1944. He said the general physical neurological examinations were entirely negative. There was no remaining evidence of injury. The appellant, however, was affected with a defense neurosis. "He very frankly states that he is afraid to work in dangerous situations." Dr. Spear stated that there was nothing in the examination or history to prevent appellant from returning to any occupation reasonably free from danger.

The Commission by its order of July 9, 1945, found that appellant had sustained a permanent partial disability under the "Other Cases" section of the Workmen's Compensation Law as a result of his injuries "consisting of fracture at the base of the skull, lacerations of the right ear, right side of face and lacerations of left mastoid process," and allowed compensation of $600 payable weekly at the rate of $10 per week. The order also states "The Commission further finds that temporary total disability ceased on August 15, 1944 inclusive. The Commission finds that the *claimant sustained no other permanent disability*." (Italics supplied)

An appeal was taken by the appellant to the Circuit Court for Baltimore County. The appellee moved to dismiss the appeal because there was no issue of fact to be

passed on, because the award was in accordance with the law, and because the record shows that the Commission did not abuse its discretion. The appellant submitted nineteen issues, which were all excepted to by the appellee, primarily because it claimed they had not been presented to or determined by the Commission, were presented for the first time on appeal, and there was no testimony before the Commission raising any of them. Meanwhile, the appellant had filed his petition with the Commission to re-open the case so that he could have a hearing before it on the specific issues, which he had submitted to the Court. He also petitioned the Court to stay proceedings there until the Commission had passed upon his petition to re-open. The Court refused the stay, and after hearing argument, sustained exceptions to all issues except Nos. 5. 6 and 7. These were then withdrawn by the appellant, and the Court then confirmed the award of the Commission. This was on May 13, 1947. Subsequently, on Juy 21, 1947, the Commission denied the petition to re-open on the ground that it did not relate any newly discovered evidence. An appeal was taken here on July 11, 1947 from the order of the Court, passed on May 13th.

This rather long recital is necessary to show the facts appearing in the record, and the method of raising the questions before us. These are first the correctness *vel* *non* of the Court's ruling on the issues submitted, and second whether the Court should have found that the Commission abused its discretion in allowing the claimant only six hundred dollars for permanent partial disability.

The nineteen issues proposed by the appellant can be readily and naturally classified. The first issue envisages a claim of permanent total disability. The second, third and fourth issues relate to the duration of claimant's temporary total disability. The fifth, sixth and seventh issues, abandoned at the trial, involved only temporary partial disability. The eighth, ninth, tenth and eleventh issues refer to a possible permanent loss of use of a fractional

part of appellant's arms. The twelfth, thirteenth, fourteenth and fifteenth are similarly concerned with the appellant's legs. The sixteenth, seventeenth, eighteenth and nineteenth are intended to ascertain whether appellant has permanently lost any part of his vision.

Section 48 of Article 101 of the Annotated Code provides the methods of calculating compensation for permanent total disability, temporary total disability and permanent partial disability. In the last named disability division there is a schedule for certain specified injuries. These include loss and loss of use of arms, legs and eyes. For the loss of the fractional part of the vision of either one or both eyes, the injured employee is to be compensated in like proportion to the compensation for total loss of vision without regard to the effect that correcting lenses may have. Following the schedule for specific injuries is the "Other Cases" clause which, as its name implies, covers all cases other than those specially enumerated. It is under this clause that the award was made in the case before us.

We have recently decided the case of *Benoni v. Bethlehem Fairfield Shipyard*, 188 Md. 306, 52 A. 2d 613, appeal dismissed by the Supreme Court for want of a substantial federal question, 332 U. S. 749, 68 S. Ct. 86, 92 L. Ed. 336. In that case we held in effect that no issue of fact could be submitted to a court or jury on appeal where it does not appear from the record that the question involved was before the Commission. That does not mean that a formal issue, specifically directed to such fact, must be presented first to the Commission. It means that there must have been at least, evidence before the Commission which would give it the opportunity to pass upon the fact. The appellant points out that in the earlier case of *Butler Bros. v. Mabin*, 171 Md. 126, 187 A. 872, this Court approved an issue of permanent total disability and also issues relating to a back injury of claimant, when the Commission, determining the question of the nature and extent of disability allowed compensation for a period of temporary total disability and then additional compensa-

tion only for loss of use of a leg. But in the *Mabin case* there had been evidence of injury to the spine offered before the Commission, and there had been no award under the "Other Cases" section. We find no conflict in the two cases.

In the case before us we find no specific issue raised before the Commission and no evidence offered before the Commission indicating any permanent total disability. Neither do we find any basis in the testimony for any extension of the temporary total disability beyond the date fixed by the Commission. Nor is there any evidence whatever of any injury to the appellant's arms or legs. We are, therefore, clearly of the opinion that the issues up to and including the fifteenth (except those withdrawn) were not justified by anything submitted to the Commission, and were rightfully excluded by the Court.

A different situation exists with respect to the last four issues concerning the appellant's possible loss of vision. It appears from the record that he complained to Dr. Rubenstein that his vision was blurred. Dr. Clapp also found some trouble with his eyes, and appellant himself testified that when he came back to work after the accident his eyes bothered him. The Commission made no specific eye award, and found he had no permanent disabilities other than those mentioned, which did not include his eyes. We think appellant was entitled to have the issues referring to his eyes submitted to a jury. The testimony given before the Commission might be insufficient to justify an award, but he is entitled to offer additional evidence before a Court or a jury. It is not requisite that the evidence before the Commission should be legally sufficient to support the issues. It is sufficient if there is enough evidence to bring the question to the attention of the Commission, so that it can be passed upon.

There is nothing in the record to show that the Commission abused its discretion in the award made under the "Other Cases" section. The amount was small, but it was not necessarily arbitrary for that reason. The evidence of nervousness or of a neurosis was slight, and

on this question the Commission found against appellant when it determined against other permanent disabiltiies. Its decision on this question is not reviewable, but, of course, if appellant's condition in this respect grows worse, he is not foreclosed from again going to the Commission. As the question is now presented, we cannot hold there was any unreasonable action by the Commission. We see no occasion for the Court below to have stricken out the award as contended by the appellant.

The order of the trial court will be reversed and the case remanded, so that the appellant may have an opportunity to try the sixteenth, seventeenth, eighteenth and nineteenth issues. After he has offered evidence with respect to these issues, the trial court may (if requested), determine whether such evidence is legally sufficient to sustain them or any of them. Nothing in this opinion is intended to reflect upon that question, which is not in any way before us.

*Order reversed and case remanded for a new trial in accordance with this opinion. Costs to be paid by the appellee.*