549 A.2d 18

**Irwin H. DESSER**

v.

**DEPARTMENT OF HEALTH & MENTAL HYGIENE et al.**

**No. 5, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 1, 1988.

2

Ralph E. Wilson (David Freishtat, Sydney Jay Hall and Freishtat & Sandler, on the brief), Baltimore, for appellant.

Daniel J. O'Brien, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Romaine N. Williams, Asst. Atty. Gen., on the brief), Baltimore, for appellees.

Argued before BISHOP, BLOOM and POLLITT, JJ.

POLLITT, Judge.

This appeal presents a most anomalous situation. A classified employee of the State of Maryland, after having been found in violation of numerous regulations proscribing conduct on his part for which the Secretary of Personnel could have permanently removed him from the classified service, appeals because he was denied back pay when the Secretary magnanimously reinstated him. Never hesitating to look a gift horse in the mouth, he asserts that a delay of some four and one-half years between his ineffective discharge and his ultimate reinstatement deprived him of due process of law. His employer, the Department of Health and Mental Hygiene (DHMH), cross-appeals asserting that it was denied due process when the Secretary received evidence which the Department had no opportunity to cross-examine. The Circuit Court for Baltimore City affirmed the Secretary and this appeal ensued.

Irwin Desser began employment with the DHMH in 1961 and was appointed Chief of the Division of Reimbursements in November 1977. Appellant Desser was suspended from this position on 18 June 1981, pending an evidentiary hearing on charges DHMH filed seeking his removal from State service. The charges alleged violations of the Code of Maryland Regulations (COMAR) 06.01.01.47 Sections A, B, D, G, J, L, and M, which proscribe specific types of conduct which are sufficient cause for removal of classified state employees. Desser was also charged with misfeasance in

office and with having violated agency policies governing outside employment activities.

An eight-day evidentiary hearing was conducted before the Department of Personnel's hearing officer, Joan C. Ross, between the dates of October 19 and 30, 1981. On 11 December 1981, Examiner Ross issued a "Proposal for Decision" in which she dismissed the charges of violating COMAR 06.01.01.47, Sections A and B, which entail incompetency, inefficiency, or negligence in the performance of duty. She upheld each of the other charges against Mr. Desser, and recommended his permanent removal from state classified service, effective as of the date of the final order in the matter. Specifically, Examiner Ross found that:

1. ...

2. Mr. Desser was engaged in a private business or occupation when the duties of his position as prescribed by law or regulation require his entire time for their performance and accordingly violated COMAR 06.01.01.-47, Section G.

3. Mr. Desser violated COMAR 06.01.01.47, Section D in failing to obey the reasonable direction of his superior officer to cease the private practice of law during State working hours which resulted in loss to the State through this employee's subsequent charges of time and expenses to the State while engaged in his private occupation.

4. Through his willful conduct of charging time and expenses to the State while engaged in his private occupation and the concomitant use of State secretarial services in the furtherance of his private occupation, the employee has violated COMAR 06.01.01.47, Sections J and L.

5. Mr. Desser's conduct is such as to bring the classified service into public disrepute and he has thereby violated COMAR 06.01.01.47, Section M.

6. Through his activities, Mr. Desser is guilty of misfeasance in office and to the extent that he engaged in the private practice of law while on State time has violated Department of Health and Mental Hygiene Policy 2.0.

Accordingly, Irwin H. Desser, is to be permanently removed from State service effective the date of the final order in this matter, and he is further to be barred from future State service.

Desser filed exceptions to the Proposal for Decision and on 18 January 1982, oral argument was held before the Director of the State Employer–Employee Relations Division, Charles R. Hennick. On 25 January 1982, Hennick issued an "Order of the Director" in which he adopted all of Arbitrator Ross' findings of fact and conclusions of law, and upheld Desser's permanent removal from state service, effective as of the date of his original suspension. The order, however, was not submitted to the Secretary of Personnel for his review, and was never officially considered or approved by him.

On 24 February 1982, Desser entered an appeal from Director Hennick's decision to the Circuit Court for Baltimore City. While the appeal was pending, this Court, on 10 May 1984, issued its opinion in Comptroller v. Myers, 59 Md.App. 118, 474 A.2d 941 (1984). Myers was a directly analogous case in which Director Hennick had purported to give final approval to an arbitrator's decision to terminate another classified employee. The employee challenged the Director's authority to make a final decision on behalf of the DOP, and we held that the agency had, in fact, failed to follow proper procedure. Construing the applicable statute, Maryland Code (1957, 1979 Repl.Vol.), Art. 64A, § 33, we determined that "although the Secretary may delegate to an appointee his authority to hear, investigate, and determine charges brought against a classified employee, the decision of that appointee is not final until approved by the Secretary." Myers, supra, 59 Md.App. at 126, 474 A.2d at 946. Consequently, the Director's decision had resulted in "no final action or decision by the agency...." Myers, supra, 59 Md.App. at 128, 474 A.2d at 947.

Recognizing that this case had been subject to the same procedural flaw, Desser and the DHMH, on 18 March 1985, jointly moved for an order remanding the case to the

Department for further proceedings. The case was remanded on 26 March 1985. On 30 April 1985, Desser filed the requisite exceptions to Examiner Ross' Proposal for Decision and requested an opportunity for oral argument before the Secretary of Personnel. The exceptions hearing was conducted before the new Secretary of Personnel, John F.X. O'Brien on 13 May 1985.[1]

On 24 December 1985, the Secretary issued an order in which he sustained each of the violations cited by Examiner Ross with regard to Mr. Desser. In the true spirit of Christmas, however, and "in recognition of Mr. Desser's nineteen years of successful State service and the evidence that he can function as a competent and responsible manager ..." the Secretary found the penalty of discharge "excessive under the circumstances." The Secretary concluded that "Mr. Desser should be restored to duty" but that "[s]uch factors do not mitigate in favor of granting him any back pay."

Both Desser and DHMH appealed to the Circuit Court for Baltimore City. The DHMH challenged any reinstatement, arguing that such a remedy was completely inconsistent with both the previous discharge proceedings and with Secretary O'Brien's own findings. Desser, on the other hand, argues that the four and one-half year delay between the time of his suspension and reinstatement violated his rights to due process, and that he is entitled to back pay and benefits for the "excessive, unreasonable, and unfair delay and deprivation." After a hearing on 26 November 1986, Judge David Ross affirmed the Secretary's decision, finding that it was supported by substantial evidence.

---

1. During the course of this hearing, the Secretary directed that Desser submit copies of his tax returns for the years 1978–1980. DHMH noted its opposition to this procedure, arguing that it violated agency regulations, and that considering this information without remanding the case to the hearing examiner for further hearings would deprive the agency of any opportunity to challenge the accuracy of the information. Secretary O'Brien, nevertheless, admitted the information.

Based on the undisputed findings with regard to Mr. Desser's conduct,[2] and on the fact that he was at least equally responsible for any "delay" in the resolution of his case, we shall affirm the circuit court's decision. We begin by addressing Mr. Desser's contentions.

I

*Desser's Grounds for Seeking Back Pay*

Desser does not contend that the entire period from the time of his suspension to the time of his final reinstatement constituted unreasonable delay. He acknowledges that the time prior to Director Hennick's 25 January 1982 Order "could not be considered 'delay' because the events that took place during that period substantially complied with the procedural requisites" of the applicable agency statute and regulations. Instead, he argues that it was the time between Hennick's 25 January 1982, decision and the Secretary's 24 December 1985, final decision which constituted the impermissible delay in his administrative review. This was a period of 47 months. The case had been pending in the Circuit Court for Baltimore City for approximately 37 of those months.

Desser contends that, as a result of his prolonged "suspension," he suffered undue prejudice in the form of lost wages and pension benefits, and opportunities to obtain group insurance coverage and join employee investment programs. He additionally claims to have suffered "the obvious professional and career hardships that went along with the excessively long 'suspension.'" He asks this Court to provide a remedy by: "revers[ing] the decision of the trial court, determin[ing] the length of the constitutionally impermissible delay of administrative proceedings in this case, and direct[ing] the trial court to remand the case to the Secretary for a determination of the amount of back

---

2. In his brief filed in this Court, Desser does not challenge those findings, asserting instead that they "are not relevant to this appeal." We think they are indeed relevant.

pay, pension, and other benefits to which [he may] be entitled."

a. *Desser's Right to Assert Due Process/Delay Claim*

██ As a preliminary matter, appellee/cross-appellant, DHMH argues that we should dismiss Desser's claim of "excessive delay" because he failed to assert this claim earlier in this proceeding. DHMH contends that when the case was remanded to the agency in 1985, Desser raised only the limited issue of "whether due process required the reinstatement of a discharged employee following the is-suance of a termination decision by someone other than the final agency decision-maker"—but not any issue related to administrative delay in ordering such reinstatement.

This court has consistently held that no issue of fact may be submitted to a court or jury on appeal where it does not appear from the record that the question involved was before an agency. However, "[t]hat does not mean that a formal issue, specifically directed to such fact, must be presented first to the [agency]. It means that there must have been at least, evidence before the [agency] which would give it the opportunity to pass upon the fact." *Jackson v. Beth.–Spar. Pt. Shipyard*, 189 Md. 583, 589, 56 A.2d 702, 705 (1948). To support issues on appeal from the agency decision "[i]t is not requisite that the evidence before the [agency] should be legally sufficient to support the issues. It is sufficient if there is enough evidence to bring the question to the attention of the [agency], so that it can be passed upon." *Id.* 189 Md. at 590, 56 A.2d at 705.

Desser's claim of impermissible delay was preserved for appeal because it was effectively "raised" in both his admin-istrative hearing and before the trial court. In the March, 1985 joint motion for remand, the parties came to a consen-sus that "[a]t no time subsequent to the entry of the [January 25, 1982] order ... did the Secretary of the Maryland State Department of Personnel approve the Order of the Director ..." and significantly, that "absent action by the Secretary below, the decision below was and is not

final." This language clearly advised both the agency and DHMH counsel that Desser had, at that point, awaited a final disposition of the case for a period of 38 months. It was only after his reinstatement that the question of back pay became an issue.

The issue was effectively raised before the circuit court. In his petition on appeal in that court, Desser alleged that he had been deprived of due process in that he "had remained suspended without pay and allowances for four (4) full years; had Desser been accorded due process of law in 1982, his reinstatement would have occurred in 1982. . . ." Desser's memorandum in support of this appeal contained extensive argument regarding his "effective suspension of nearly four years." Since the issue was clearly raised in the trial court, it is properly before this Court.

b. *The "Administrative Delay" in the Instant Case*

■ While Desser has effectively preserved the issue of "unconstitutional delay" for appeal, his calculation of the period of delay attributable to the agency is seriously flawed. Desser maintains that the agency should be held responsible for "delaying" his reinstatement from 25 January 1982 to 24 December 1985—a period of three years and eleven months. In so arguing, however, he fails to recognize that for 37 months of this time, it was the circuit court—and not the agency—which had sole jurisdiction over the case. Had DHMH substantially contributed to this delay, there may have been some merit in Desser's position, but the record is completely lacking any evidence indicating acts on the part of the agency which delayed the resolution of the case. In fact, a substantial portion of the time the case spent in the circuit court is directly attributable to the appellant's own dilatory action. Desser clearly took no affirmative action to expedite the proceedings during this period.

Director Hennick issued his decision on 25 January 1982. On 15 September 1982, DHMH moved to dismiss the case because Desser had failed to comply with Maryland Rule

B7(a), which required Desser, as the party requesting the transcript of oral hearings, to pay in advance the cost of transcription. As a result of this delay, the record was not filed within 30 days as required by the Rule. Also Desser himself sought extensions for the filing of memoranda, thereby delaying the oral argument date by several months. Conversely, the only specific delay which Desser can cite on the part of DHMH was its motion for a two month delay in filing the record after Desser finally paid the transcription costs.

When Desser was not actually causing delays, he made no affirmative effort to expedite the resolution of the case. After the state completed its brief on 31 January 1984, Desser was so inactive in pursuing the matter that, on 5 February 1985, the circuit court, pursuant to Maryland Rule 2–507(d), issued a notice of contemplated dismissal for lack of prosecution. It was not until 18 March 1985—10 months after the *Myers* decision, that Desser joined DHMH in filing for remand. This action was initiated by DHMH. The case was then remanded just eight days later.

The agency cannot be held accountable for the period in which the court exercised exclusive jurisdiction over the proceedings. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), where the Supreme Court declined to include in the period of "delay" the period of time during which an appeal was pending before the state court. Even though the case had been in the state courts for about two years (*see Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 554 (6th Cir.1983)), the Supreme Court considered only the nine-month period consumed by the administrative proceedings, which it held was not unconstitutionally lengthy. Thus the only period of delay Desser possibly could attribute to the agency was from 18 March 1985, the date of the joint motion for remand of the case, to 24 December 1985, the date of the Secretary's final decision, and even this nine-month delay was not attributable entirely to the agency. After the case was remanded on 26 March 1985, Desser did

not file the required "exceptions" to Hennick's ruling until 30 April 1985. Desser then received a timely hearing before Secretary O'Brien on 13 May 1985. Consequently, the only period in which DHMH could be charged with delaying the resolution of this case was from 13 May 1985, to 24 December 1985—a period of seven months and 11 days.[3]

c. *Did the 7 month Period of Delay Amount to a Due Process Violation?*

▉ In *U.S. v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), the Supreme Court adopted as a test for determining whether unreasonable delay violates Fifth Amendment rights against deprivation of property without due process of law, the same factors developed in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), dealing with Sixth Amendment rights to a speedy trial. Under the test, consideration is given to the "length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*, 461 U.S. at 565, 103 S.Ct. at 2012. Both parties agree that this is the proper standard by which to assess the delay in the instant case. Under this analysis, there clearly has been no violation of Desser's constitutional rights.

### (i) *The Length of the Delay*

Appellant contends that the length of delay in administrative review was from 25 January 1982, the date of Hen-

---

**3.** Seizing upon *dicta* in *Pope v. Secretary of Personnel*, 46 Md.App. 716, 420 A.2d 1017 (1980), *cert. denied*, 289 Md. 739 (1981), Desser suggests the time limits within which the Secretary must render a decision, mandated by Art. 64A, § 33(b)(2)(iii), as amended in 1978, may be mandatory and not directory. That same *dicta* observed, however, that even if the provision is mandatory, reinstatement would not be an appropriate sanction. We note also, as Judge Lowe did for the Court in *Pope*, that the word "shall" is directory when it is used in an unsanctioned statute directed toward an arbiter's time limitations for opining.

nick's decision, to 24 December 1985, the date of Secretary O'Brien's final decision. As discussed *supra,* only seven months and eleven days can be charged to the agency.

### (ii) *The Reason for the Delay*

Desser asserts that the Secretary of Personnel failed to comply with the requirements of Code, Art. 64A, § 33 (currently Section 33(b)(2)(iii)) which provides that the Secretary shall render his decision within 45 days after the hearing or after all memoranda and briefs were filed. A part of the delay was so that the appellant, over the vigorous objection of DHMH, could submit additional financial information and a supplemental memorandum in support of his position. Desser filed the memorandum and financial information on 22 May 1985. The information was later admitted and the record closed. While the seven month decision-making period did exceed the prescribed time, we cannot say it was unreasonable in view of the extensive record the Secretary was required to review.

### (iii) *The Defendant's Assertion of his Rights*

As we have observed previously, for the roughly 37 months in which this case was in court, Desser made no attempt to expedite the proceedings. He did nothing of record to expedite the case in the first two years in court. Following the *Myers* decision in May, 1984, he did not attempt to litigate the "finality" of Hennick's order until March, 1985. Further, there is no evidence that he ever sought to have a hearing set before a circuit court judge until faced with a potential dismissal for failure to prosecute.

The Supreme Court has held that where a claimant has the opportunity to expedite judicial proceedings, his failure to do so "can be taken as some indication that [he] did not desire an early judicial hearing." *Eight Thousand Eight Hundred & Fifty Dollars, supra,* 461 U.S. at 570, 103 S.Ct. at 2015.

## (iv) *Prejudice to the Defendant*

The final element is whether the claimant has been prejudiced by the delay. The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence. Such prejudice could be a weighty factor indicating that the delay was unreasonable. *Eight Thousand Eight Hundred & Fifty Dollars, supra,* 461 U.S. at 570, 103 S.Ct. at 2014. Desser's argument for reinstatement was clearly not prejudiced by the delay. On the contrary, this period would seem to have benefitted him. It is clear from the record that Secretary O'Brien did not underestimate the egregious nature of Desser's conduct. In his decision, Secretary O'Brien observed:

> The record reflects that Mr. Desser violated the instruction not to pursue his private practice of law during his State working hours, that not only did he willfully ignored [sic] this directive but also he charged time and travel expenses to the State, used State secretarial and telephone service and office space in the furtherance of his private practice of law. I conclude that such activity whether it was done once, four times or forty times violates the public trust and undermines the credibility of the classified service.

Significantly, while the Secretary felt that Desser's "nineteen years of successful State service" did justify his reinstatement, he specifically stated that, in light of the offenses committed, "[s]uch factors do not mitigate in favor of granting him any back pay." It is obvious that the Secretary factored the four and one-half years without pay into his decision to order reinstatement. If the Secretary felt the offenses were so severe that they justified this length of time without pay, then it is obvious that absent this form of "punishment," the Secretary would have had no incentive to reinstate. As Judge Ross for the circuit court astutely recognized:

The employee was not the victim of a wrongful discharge. Rather, his discharge proceeding was procedurally flawed in that the ultimate agency decision was made by the wrong person. It is clear from the Secretary's written decision that the sanction of suspension without pay was an integral part of his decision. Based on the evidence in this case and the reasoning of the Secretary one could readily conclude that had the secretary been limited to the alternatives of discharge or reinstatement with back pay he might well have opted for discharge.

Desser's initial suspension was justified and he was ultimately benefitted, rather than prejudiced, by the length of that suspension.

## II

### *The Cross–Appeal by DHMH*

■ The principal complaint on cross-appeal concerns the Secretary's decision to admit Mr. Desser's tax returns into evidence without allowing the agency the opportunity to review and challenge this information. Secretary O'Brien requested Desser to provide copies of his 1978–80 income tax returns to better ascertain the extent of Desser's private law practice, both on state time and on his own time. The DHMH moved to exclude that evidence or "any additional evidence which was not introduced during the week of hearings before the Employer–Employee Relations Arbitrator for the reason that such information was obviously available to [Desser] at the time of the initial hearing and that the introduction of such information [was] legally impermissible...." DHMH argues that by receiving new evidence at the exceptions hearing, the Secretary committed an error of law which violated both DOP hearing regulations and APA contested case requirements.

In order to establish that the Secretary's action constituted reversible error, DHMH has the burden of showing prejudice in addition to the alleged error. "If an erroneous admission of evidence did not affect [the Secretary's final]

decision, that decision will not be disturbed." *Jacocks v. Montgomery County,* 58 Md.App. 95, 107, 472 A.2d 485, 490 (1984).

Assuming, *arguendo,* that the Secretary did err in requesting and admitting copies of Desser's tax returns, DHMH has failed to show that it was prejudiced thereby. There is no evidence in Secretary O'Brien's final decision that he based his conclusions on any information within the tax returns. Secretary O'Brien took into account: "Mr. Desser's long and successful career with the State and his outstanding employment record as well as the mitigating evidence that Mr. Desser often worked overtime and incurred expenses on State service for which he did not seek reimbursement...." The Secretary's concluding remarks were: "[I]t is in recognition of Mr. Desser's nineteen years of successful State service and the evidence that he can function as a competent and responsible manager that I conclude Mr. Desser should be restored to duty." There is simply no evidence that these findings came from the tax returns and no language indicating that the Secretary considered the tax returns.

 Given Mr. Desser's long and successful employment record with the state, the Secretary was within his discretion in ordering his reinstatement. As Judge Ross noted:

It is abundantly clear that a reasoning mind could reasonably have concluded that the employee should have been discharged, but that does not of necessity rule out that another reasoning mind could reasonably reach the opposite conclusion. Subject to limited court review the ultimate decision rests with the administrative agency. The fact that two different individuals reached different conclusions does not establish arbitrariness and capriciousness per se.

The proceeding before the Department of Personnel was a "contested case" within the meaning of the Administrative Procedure Act. *Myers, supra,* 59 Md.App. at 125, 474 A.2d at 945. The standard of judicial review in such cases

is set forth in Maryland Code (1984), § 10–215(g)(3) of the State Government Article. The court may reverse or modify the decision of the agency only:

(3) ... if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

Finding none of the above, the trial court correctly affirmed the action of the Secretary.

JUDGMENT AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.